No. 27,608.

IDA LEACH, *Appellee,* v. THE METROPOLITAN LIFE INSURANCE COMPANY, *Appellant.*

(261 Pac. 603.)

SYLLABUS BY THE COURT.

1. INSURANCE—*Group Insurance on Lives of Employees—Writings Constituting Policy and Subsequent Amendments Construed Together.* An application by an employer to an insurance company for group insurance on the lives of its employees, provided that "all employees of the employer who are actively at work and who have completed six months' service shall be eligible for the insurance under this policy." An application afterwards by the same employer to the same insurance company for additional insurance stated that "employees now insured may apply for additional life insurance"; also, "these amendments and changes are to be taken and considered as part of the said application and subject to the agreements and covenants therein contained, and the said application, together with these amendments and changes, are to be taken as a whole and considered as a basis and as a part of the contract of insurance." The insurance company accepted the amendments in this language: "The above amendments and

Group Insurance, 28 C. J. p. 879 n. 2. Insurance, 32 C. J. pp. 1057 n. 17, 1148 n. 47, 1158 n. 38, 1162 n. 22 new, 1164 n. 69; 50 A. L. R. 1286. Life Insurance, 37 C. J. p. 411 n. 24 new.

changes under application for group policy . . . are hereby accepted and payments under the policy will be in accordance with such amended application on and after May 16, 1924." *Held,* the original application, the amendments thereto and other writings constituting the policies, must be considered and construed together in order to ascertain the intention of the contracting parties.

2. SAME—*Group Insurance on Lives of Employees—Employees Included.* And, further, it was necessary as a condition precedent that an employee to have been entitled to additional insurance under the later arrangement, must have been actively at work on the effective date of the new policy or subsequent thereto.

3. SAME—*Group Insurance on Lives of Employees—Lapse of Employment Before Effective Date of Policy.* And, further, an employee who had insurance under the original arrangement and who made application for additional insurance, but whose employment lapsed before the delivery and effective date of the additional insurance, was not entitled thereto.

4. SAME—*Employee Not Within Terms of Policy—Return of Premium and Cancellation of Policy.* And, further, *held,* where the insurance company delivered a policy for the additional insurance to the insured or his beneficiary without knowledge that the employee was no longer actively at work for the employer, and received premiums therefor, but returned the premiums to the employee and canceled the policy immediately on learning of his lapse of employment, the insurance company was not liable to the beneficiary for such additional insurance.

5. SAME—*Group Insurance on Lives of Employees—Agency.* And, further, *held,* under the facts related in the opinion, there was no agency on the part of the employer for the insurance company.

Appeal from Crawford district court, division No. 1; DANIEL H. WOOLLEY, judge. Opinion filed December 10, 1927. Reversed.

*C. O. Pingry, P. E. Nulton* and *G. L. Stevenson,* all of Pittsburg, for the appellant.

*A. B. Keller, C. S. Denison* and *E. V. Bruce,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on a certificate of life insurance issued under what is known as the group insurance plan. Plaintiff prevailed and defendant appeals.

On May 7, 1923, the Kansas City Southern Railway Company made application to defendant for a group policy of insurance on the lives of its employees. The application was granted and such a policy issued May 8, 1923. Thereafter, and on April 19, 1924, the defendant issued its individual policy of insurance to plaintiff's

husband, since deceased, in the sum of $1,000. Previous to the date last mentioned, the railway company had made application to the ·defendant for additional insurance for its employees. The application was accepted and terms agreed upon, to be effective May 16. On May 5, 1924, the deceased applied for one thousand dollars additional insurance and was issued a rider or certificate increasing. his insurance one thousand dollars, effective May 16. The deceased last worked for the company on May 7, and after May 9, 1924, was confined in a hospital and died January 28, 1925. He was not working for the railway company on May 16. William Moran, an employee of the railway company, delivered the policy of insurance, or rider, to plaintiff sometime in June, 1924; talked with her at that time and knew her husband was in the hospital, but continued to receive payments from her on her husband's policy until notified by the company in October, 1924, not to receive any further payments. The defendant first learned of the deceased's illness the latter part of September, 1924, through claim made by him for total and permanent disability benefits, and thereupon canceled the rider providing for the additional insurance. There is no controversy as to the original policy for $1,000. The defendant paid benefits for disability on the basis of $1,000, amounting to $51.04 per month until the time of insured's death, and thereafter paid the balance of the $1,000 due. The controversy concerns only the additional insurance.

Various questions are raised and argued, but the main one around which the controversy turns is whether in making the contract it was the intention of the parties that the policy for additional insurance should cover one who was not actively engaged at work for the railway company at the effective date of the new policy.

Under provisions of the original application, the insurance was to become effective May 8, 1923, and was to apply to employees actively at work on that date and who had been in the continuous service of the railway company for six months. It was to become effective when seventy-five per cent of the eligible employees of the railway company made application thereunder. Employees who were eligible, and who made written application for insurance, were insured for one, two or three thousand dollars, according to the annual salary each received. The insurance was to be automatically increased or decreased on April 1 of each year if the salary of the employee was increased or decreased. The term of the insurance

Leach v. Metropolitan Life Ins. Co.

was to be for one year from the date of the group policy, and renewals thereof from year to year, such renewals being granted by the defendant upon the application of the employer, the insurance company reserving the right to decline to renew the policy on any anniversary when the number of the employees insured was less than seventy-five per cent of those eligible for insurance. It was provided that—

"All employees of the employer who are actively at work and who have completed six months' service shall be eligible for the insurance under this policy. .

"All new employees of the employer who are actively at work are entitled to apply for the insurance after completing six months' continuous service.   . . .

"The company will issue to the employer, for delivery to each employee whose life is insured hereunder, an individual certificate setting forth a statement as to the insurance protection to which such employee is entitled, the beneficiary to whom payable," etc.                  · ·

The certificate issued to the deceased certified that it was under and in accordance with the group policy.

The group policy provided that the premiums should be payable by the employer; that the insurance company would issue to the employer, for delivery to each employee insured under the group policy, an individual certificate setting forth a statement as to insurance protection, etc.; that the group policy, the application of the employer and the application of the employees should constitute the entire contract between the parties; that the employer would report to the insurance company each month the names of the employees insured and not previously reported, the names of the employees whose insurance is discontinued on account of termination of employment, etc., the names of new employees applying for insurance, the names of the employees not insured, etc.; that upon proof of total and permanent disability the insurance company would pay to the employee certain amounts per month in lieu of the payment at death; that upon written election by the employer the amount payable upon the death of the employee insured would be withheld by the company and paid out in equal monthly installments or equal weekly installments.

The application for additional insurance, among other things, stated:

"Employees now insured may apply for additional life insurance in accordance with the amount of insurance now in effect as follows:

CLASS 1. Those insured for $1,000 may apply for $1,000 additional life insurance.

2. Those insured for $2,000 may apply for $1,500 additional life insurance.

3. Those insured for $3,000 may apply for $2,000 additional life insurance.

"This insurance will become effective on the date when seventy-five per cent of all eligible employees have made written application.

. . . . . . . . . . . . . . . .

"As of and from May 16, 1924, these amendments and changes are to be taken and considered as part of the said application and subject to the agreements and covenants therein contained, and the said application, together with these amendments and changes, are to be taken as a whole and considered as a basis and as a part of the contract of insurance."

The defendant accepted the amendments in this language:

"The above amendments and changes under application for group policy No. 1856G are hereby accepted, and payments under the policy will be in accordance with such amended application on and after May 16, 1924."

Was it the intention of the parties that an employee, in order to procure the additional insurance, must as a condition precedent be actively at work on the effective date of the new policy? An answer to the question must be found by a reasonable interpretation of the written instruments. When that intention is ascertained the parties are bound. We are of opinion the writings must be considered and construed together. (1 Bacon Life & Accident Insurance (4th ed.), p. 395, ¶ 226.) The language of the application for additional insurance—

"These amendments and changes are to be taken and considered as part of said application and subject to the agreements and covenants therein contained, and the said application, together with these amendments and changes, are to be taken as a whole and considered as a basis for each part of the contract of insurance,"

indicates clearly that understanding. That the deceased was not actively at work for the railway company on May 16, 1924, or at any time subsequent thereto is not disputed. The jury found that he was not actively at work for the railway company on May 16, or at any time thereafter; that the last day he was actively at work for the railway company was noon of May 7, 1924. The jury also found that the defendant did not learn that the deceased was not so actively at work until September 26, 1924; that defendant received no premiums from the deceased after the date last mentioned, and

that it refunded the premiums paid by or on his behalf for the additional insurance.

It is clear that in making the arrangement now under consideration the parties understood that the defendant was to insure employees of the railway company, and not those who had been employed and whose employment had ceased.

Group life insurance differs from ordinary old-line life insurance. Group insurance is similar in many respects to workmen's compensation insurance. Each is secured by the employer for the benefit of the employee. Employment is a condition precedent for each to be effective. The employer and employee stand closer together in group insurance than in workmen's compensation insurance. Ordinarily under group insurance the employer pays part of the premiums and all of the costs of handling the insurance for his employee, without deriving any direct financial benefit therefrom and without relieving himself from the payment of any legal obligation he owes his employees. Under workmen's compensation insurance the employer pays the premium and cost of handling the insurance, not so much for the benefit of his employees, but in order that he may be indemnified for the payment of his legal obligations to his employees under the workmen's compensation law. The employer, under a workmen's compensation policy of insurance, has no authority to bind the insurance company so as to make such insurance company liable to an employee for an injury not received in the course of employment. Nor has the employer, ordinarily, under a group policy of insurance the authority to bind the insurance company so as to make such insurance company liable to an employee not actively at work for such employer on the effective date of the insurance.

The plaintiff contends that Moran and the railway company were defendant's agents, and that by their acts all irregularities were waived. We think not.

"To make out a case of waiver of a legal right there must be a clear, unequivocal and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part." (27 R. C. L. 909. See, also, *Green v. Insurance Co.,* 106 Kan. 90, 93, 186 Pac. 970; *Cure v. Insurance Co.,* 109 Kan. 259, 261, 198 Pac. 940.)

A similar group policy of insurance to the one in question was

considered in *Duval v. Metropolitan Life Ins. Co.*, (N. H.) 136 Atl. 400. The court among other things said in the opinion:

"The acts of the employer in forwarding the application and delivering the certificate to the employee are claimed to be on behalf of the defendant. No reason is perceived why this should be treated as an agency for the defendant rather than for the employees.

"The certificates issued to employees are in a brief form, and refer to the master policy issued to the employer for further information. It is urged that this makes the employer the insurer's agent to give such information. The employer holds the master policy, not for, but rather against, the insurer. The reference for information is to the policy, not to the employer. If it were conceded that a false representation by the employer as to the content of ·the policy could be charged to the insurer, it would not affect the result. There is no claim of any such misrepresentation. The position taken is that the employer had authority to act for the insurer in dealing with its known and acknowledged rights under the policy.

"The claim that the employer is the agent of the insurer in the collection and forwarding of premiums is wholly without foundation. By the express terms of the policy the company looks to the employer for the payment of the premiums. It has no concern with whether it collects part of them from the employee or not. The employee is insured because he had made application, and because the employer promises to pay the insurer the premiums. The promise to pay is for the benefit of the employee.

"Again, it is urged that as the provisions as to notice of claim, proof of loss, etc., are contained in the master policy, therefore the employer is the insurer's agent to give information on·these subjects. It is said that the whole purpose of the group insurance scheme would be frustrated unless the employer coöperates with the employee as agent 'by implication' for the insurer.

"That the employer is expected to coöperate with the employee is evident. The whole scheme is paternalistic.. The error of counsel, here and elsewhere, is in failing to appreciate that the paternalism is that of employer towards employee. It does not have the effect of making the benevolent parent the agent of the party with whom he inaugurates a contract for the benefit of his children. The line dividing the three parties to the contract according to their interests and real position in these transactions puts the employer with the employee, as opposed to the insurer.

"Much is made in argument of the proposition that the whole plan and scheme was to furnish protection to the insured. Of course, this is true, but it does not follow that the insurer is made chargeable with the conduct of the intermediary who sought to bring the insurer and insured into relation, who offered and bound itself to pay to the insurer the price demanded for the insurance, and who agreed to perform the office of keeping the insurer informed as to who had accepted, and came under the terms of, the offer.

. . . . . . . . . . . . . .

"It may be noted in passing that there is here no claim of any fraud or deception practiced upon the employee, or of any right lost because full infor-

Leach v. Metropolitan Life Ins. Co.

mation was not given to him. The supposed difficulties of his situation are here set up as evidence that the employer must be treated as the general agent of the insurer if the contract is to afford the employee the reasonable protection it is to be assumed the parties intended that he should have. As before stated, the answer to the whole argument is that this is an arrangement instituted by the employer for the benefit of the employees. The employer sought and obtained from the insurer a contract for their benefit. Naturally the employee looks to the employer for guidance and information. There is nothing sinister in such a situation. Their interests are not adverse. but common. The outstanding fact that the employer has interested itself in this matter and has undertaken a part of the financial burden for the benefit of the employees, shows that in the ordinary course of events the employee would be expected to place reliance in his benefactor, and would think of the employer in that light rather than consider it to be the representative of the insurer. The insurance was something the employer and employees were to obtain by their joint efforts. It was not something the employer was engaged in getting as a representative of the insurer." (p. 404.)

In the instant case deceased's eligibility lapsed before issuance of the policy. The policy was issued by the defendant under the mistaken idea that the deceased was eligible. The defendant took immediate means to correct the mistake when knowledge of the facts was brought home to it. The conclusion at which we have arrived renders unnecessary any discussion of other questions raised in the briefs.

The judgment is reversed and the cause remanded, with instructions to render judgment for the defendant.