## 28868. McCLAIN *v.* PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY.

DECIDED JULY 16, 1941.

*Stanford Arnold,* for plaintiff.

*W. Y. Atkinson, R. O. Jones,* for defendants.

STEPHENS, P. J. This case is in this court on exception to the sustaining of a general demurrer to the petition as amended. The facts alleged were substantially as follows: Mrs. Julia McClain filed suit against the Provident Life & Accident Insurance Company to recover on a certificate of employer group insurance, in which she was named the beneficiary, and which was issued by the company, on September 18, 1939, insuring the life of her son, Eddie McClain. Her son, at the time the certificate was issued to

him, was an employee of the Newnan Cotton Mills, and the certificate was issued to him as such employee. He died on April 21, 1940. On May 4 the company was duly notified of his death, and a claim was made for the amount of insurance provided for in the certificate. Payment of the claim was refused on the ground that the policy was not in force at the time of the death of the insured because of non-payment of the premium provided for in the certificate.

The certificate provided that the company "certifies" that the insured "under group policy No. 4077, with its supplements, issued to Newnan Cotton Mills (hereinafter called the employer), covering its employees, is entitled to benefits in accordance with the terms, conditions, and limitations thereof, to the extent only as set out therein, and conditioned upon the payment of the premiums required therefor when due; . ." that "upon receipt of satisfactory proof of the death of the employee . . while insured under the group policy and while the group policy is in full force, the company will pay the sum shown under section A . . to the beneficiary designated by the employee subject to the privileges and provisions of the group policy and its supplements;" that "the insurance granted under the policy with respect to the employee shall not be in effect until the employee's premium has actually been paid, or charged against him . . on the payroll of the employer;" that "the payment of premium for each period as stated in the application herefor shall apply only to the insurance period in which such payment is made;" that "no claim during any period for which its respective premium has not been actually paid in full or charged against the employee on the payroll by the employer and covered by wages earned and due, shall be valid; . ." that "failure of the employer, or his representative, to deduct any of the premium payments shall be at the risk of the employee;" and that "the insurance on any employee shall cease . . when active employment with the employer named herein is terminated, . . and the company, upon request, shall refund any unearned premium paid to cover any period beyond the date of such termination."

It was also alleged that the "master policy" issued to the employer "provided that payment of a premium of thirty-five . . cents per week would insure the employee in the amount of five hundred . . dollars;" that this policy also provided that "all

premiums under this policy are payable by the employer when due as stated in the application;" that "the first premium payment . . will carry the insurance on such employee to the end of the calendar month (or week) in which the insurance is made effective;" that "all subsequent premiums continue the insurance in force from the first of each calendar month (or week) for the period of a month (or week), or that proportionate part of the month (or week) which the premium paid represents."

It was further alleged that the insured became ill on January 26, 1940, and that all premiums due to that date had been deducted from his wages and paid by his employer to the company; that on February 9, 1940, the insured returned to work, and after working a short while collapsed and was carried home, and as a result of his illness and collapse died April 21, 1940, and that for the time worked on February 9, 1940, the insured was paid $1.86, from which amount of earned wages the employer deducted seventy cents and paid that sum to the defendant.

Therefore, treating the payment of this seventy cents as a payment of weekly premiums in advance, it paid the insurance for two weekly periods, namely until February 23, 1940. The policy provided for 31 days grace, during which period the policy would not be lapsed. So, at the most, the certificate of insurance was, under the terms of the policy and the certificate, not subject to be lapsed for nonpayment of premiums until the expiration of 31 days after February 23, 1940. The insured died April 21, 1940, which was nearly one month after the insurance became, under the provisions of the certificate and master policy, without force or effect.

It was alleged that as the insured was ill and mentally and physcally incapable of working, and therefore earned no wages during such incapacity, and as the policy contained no provision to take care of such a situation, the policy should be considered in force, and should not have been cancelled while the insured was thus incapable of working and could not earn the wages from which premiums could be paid, and particularly was this true when all premiums were paid until he became ill and ceased work. Even if for any reason the employer should have continued to pay the premiums for the insured, but failed to pay such premiums, the policy provided that "failure of the employer, or his representative, to deduct any of the premium payments shall be at the risk of the

employee." It did not appear that the employer was the authorized agent of the insurance company and therefore could waive provisions of the certificate and policy relative to payment of premiums, etc. The certificate and the master policy constituted the contract, and if there was no provision made for a situation where, under an employee's group policy, the insured employee became ill while at work, and was unable to work for a period, and consequently earned no wages and therefore premium payments could not be deducted from earned wages, this would not serve to keep the policy in life, where it was specifically provided that the effectiveness of the insurance benefits was conditioned "upon the payment of the premiums required therefor when due."

The rule appears to be well settled that in the absence of any provision of the policy for suspension of premiums during the sickness and disability of the insured, his insanity or incapacitating sickness, because of which he fails to pay a premium when due, will not excuse such failure so as to prevent a forfeiture, termination, or suspension of his rights, where the policy expressly provides for such forfeiture, termination or suspension in the event of nonpayment. The courts have taken the position that, since payment of premiums and assessments may be made by others, and need not be made by the insured personally, his insanity or sickness should not relieve against the effect of nonpayment. See Thompson v. Knickerbocker Life Ins. Co., 104 U. S. 352, 26 L. ed. 765; *Hipp* v. *Fidelity Mut. L. Ins. Co.,* 128 *Ga.* 491 (57 S. E. 892, 12 L. R. A. (N. S.) 319); 29 Am. Jur. 362, 363.

There is nothing in the present case to make applicable the rule that the insurer is liable under the policy where the premium is to be paid out of funds or wages due from the employer to the employee, on the theory that such an order on funds in the hands of the employer constitutes an assignment or payment of the premium. See note, 67 A. L. R. 181 et seq. It has been held that where the contract of insurance provides for the payment of premium installments from wages earned during a specified time, and there are not earned sufficient wages during that time with which to pay the installments, the policy will lapse. See 67 A. L. R. 180, 181, 185 et seq. However, in the present case, no wages were earned, and the employee was not working at the time of his death. See 67 A. L. R. 193, 194; 85 A. L. R. 755.

The plaintiff contends that the policy could not be lapsed where the insured was sick and mentally and physically incapable of working, without notice being given that unless the premium was paid the policy would lapse. If by express or policy provision the premium is to be paid by the employer of the insured, no notice of nonpayment to the insured is required where he knows or should know that no funds are in the hands of the employer for such payment, either because they were not earned or were withdrawn. 67 A. L. R. 195.

The fact that the illness and incapacity to work of the insured were compensable under the Georgia compensation laws would not serve to keep the certificate of insurance in force on the theory that the compensation to which the insured might be entitled would be, in effect, funds due the insured from which the employer could and should make the premium payments.

The facts of this case do not show that the conduct of the insurer amounted to a waiver of the payment of premiums, or the existence of acts and conduct on the part of the insurer which would justify an application of the doctrine of equitable estoppel and prevent a cancellation of the policy for nonpayment by the insured of premiums as required by the policy.

It appears that, under the provisions of the employee's certificate and the master group policy of insurance, on account of nonpayment of premiums the contract of insurance was not in effect when the insured died. The court did not err in sustaining the demurrer. *Judgment affirmed. Sutton and Felton, JJ., concur.*