CLAPP *v.* SUN LIFE ASSURANCE COMPANY OF CANADA.

4-6817                                     163 S. W. 2d 537

Opinion delivered July 6, 1942.

*Alonzo D. Camp,* for appellant.

*John M. Lofton, Jr.,* and *Owens, Ehrman & McHaney,* for appellee.

HOLT, J. In August, 1939, Malvin John Clapp was an employee of the Missouri Pacific Railroad Company, and at this time the railroad company was carrying with appellee, Sun Life Assurance Company of Canada, a

group insurance policy No. 1682-G covering its employees. Mr. Clapp applied for and was issued a certificate of insurance No. 18154 by appellee under this group policy on August 3, 1939. Harry Clapp, son of M. J. Clapp, was named beneficiary in the insurance certificate. At the time of acquiring the insurance, Mr. Clapp signed and delivered to the railroad company a deduction order, authorizing the railroad company to make monthly deductions from his pay check. This deduction was made on the last day of each month and was payable in advance on the first day of each month, the insurance being carried from month to month.

Mr. Clapp died November 30, 1940. Demand was made by appellant beneficiary for the amount of insurance under the insurance certificate. Appellee denied liability on the policy and refused to pay same on the ground that the insurance certificate in question lapsed on September 30, 1939, for nonpayment of premiums.

January 3, 1941, appellant filed suit on the policy in the Pulaski circuit court, alleging full compliance with all of its terms. Appellee answered with a general denial. By agreement, the cause was submitted to the court sitting as a jury, and there was a finding in favor of appellee insurance company. From a judgment on this finding comes this appeal.

The group insurance policy No. 1682-G contains, among others, the following provisions: ''Cessation of Assurance:—Subject to the terms of the clause providing limited waiver of premium on disability, the assurance shall cease at the earliest following dates:—(a) thirty-one days after the employee leaves the service of the employer or (b) at the due date of the premium to which the employee has failed to make a required contribution or (c) at the date such employee otherwise ceases to be eligible under the group policy. Assurance of all employees shall cease immediately upon the lapse or discontinuance of the group policy.''

From the effective date of the policy, August 3, 1939, until Malvin John Clapp died, November 30, 1940, he earned each month between those dates sufficient money to pay his monthly premiums which were due and payable in advance on the first day of each month.

September 28, 1939, Mr. Clapp by virtue of a reduction order ceased work for the railroad company, but was reinstated October 16, 1939, and again worked for the company. Subsequent to September 28, 1939, Mr. Clapp paid none of the monthly insurance premiums required under the insurance certificate issued to him by appellee. It is not denied that during the months that he worked for the railroad company, subsequent to September 28, 1939, the railroad company paid him the full amount of his monthly earnings without first having deducted the monthly insurance premiums.

It is the contention of appellee that appellant, as beneficiary, is not entitled to recover for the reason that the insured suffered the policy to lapse on September 30, 1939, by refusing to pay the premium due in advance, October 1, 1939, and all subsequent premiums, and that the insured, Clapp, refused to reinstate the policy after he had been duly notified of his delinquency.

Appellant, on the other hand, contends that no notice was ever given to Mr. Clapp, the insured, that his monthly insurance premiums were not being paid and that the railroad company had in its hands his deduction order, and sufficient funds at all times with which to pay his monthly premiums, and says in his brief "the real issue in this case turns upon a question of notice."

It must be borne in mind, at the outset, that the group insurance contract in this case is one between the railroad company and appellee insurance company. *Neely* v. *Sun Life Assurance Company of Canada,* 203 Ark. 902, 159 S. W. 2d 722, this court said: "The appellee and the railroad company were the only parties to the group policy, and the law seems to be well settled that the parties who make a contract may rescind the same by mutual agreement."

On the question of notice to the insured, Mr. A. S. Metcalf, chief clerk of the Missouri Pacific shops, testified: "Q. Do your records indicate when he (meaning Mr. Clapp) came back? A. Yes, sir, in the restoration of the force we had occasion to call Mr. Clapp back in line with seniority and he went back to work October 16, 1939.

Q. Do your records reflect, or do you have any information as to why the premium reductions on Mr. Clapp's policy was discontinued? Do you have any record? A. I wouldn't have any records and couldn't say. Q. Was it called to your attention some time in 1939 or first part of 1940 that Mr. Clapp was not carrying his insurance? A. In January, 1940—in order that you may understand this—all employees covered under the group plan get a low rate and it is set up so that such and such a per cent., I think, 74 per cent. of the shop employees have to be covered to keep this in effect. And, naturally, in the office there, we are interested in keeping as many men insured as possible. We made periodical checks of copies of the pay roll and this man was found not to be covered and we called it to his attention and asked if he wanted the benefit of this protection, that was in January, 1940, and we didn't hear anything further from Mr. Clapp. Q. Did you inform the foreman that he was not carrying the insurance? A. I wrote the foreman that Mr. Clapp was not insured. Q. That was in January, 1940? A. Yes, sir. Q. Did you put out a second letter? A. In August, 1940, the same information. Q. After that second letter, did you personally have a conversation with Mr. Clapp? A. Yes, he came up to the office. . . .

"Q. Did you personally request Mr. Clapp to reinstate the insurance? A. Yes, sir. Q. What did he tell you? A. He told me, 'I don't know if I need insurance. I haven't got a wife and don't know whether I want it. I will let you know later.' . . . Q. Did he ever come back and let you know or make a request that the policy be reinstated? A. I heard nothing more from him. Q. Were you the man he would necessarily see? A. Yes, if he came to the office, I would be the man he would interview or talk to."

This witness further testified that if Mr. Clapp had permitted him to do so the insurance would have been reinstated and further: "If a man laid off on force reduction he would pay his premium in cash. If he wanted to keep it in effect he would come up and pay in cash. We would send it in for him or they could send it in direct." The testimony further reflects that Mr. Clapp did not

avail himself of this privilege on September 30, 1939. When he did return to work on October 16, 1939, he was at a new division point in Little Rock, Arkansas, and he then could have gone to the chief clerk and had his insurance reinstated, but he failed to do so.

From this testimony we think it clear that Mr. Clapp was properly notified that his insurance had lapsed and after receiving this notice declined to reinstate it.

Appellant argues that the conversation between Mr. Clapp and Mr. Metcalf, the agent of the railroad company, was incompetent. However, we think it was competent as a declaration against interest made to one not a party to or interested in the litigation.

Appellant also contends (quoting from his brief) : ''It is incumbent upon the insurance company itself to take some action before it may insist upon a forfeiture. The insurance company itself must notify the insured of the situation; it must, it seems, make demand upon the erstwhile insured and offer to the delinquent some reasonable method or plan by which his lapsed policy may be reinstated.''

It is conceded here that whatever effort was made to give notice to the insured, Mr. Clapp, was given to him by the railroad company, and not directly by appellee. We think it can make no difference whether this notice was given to Mr. Clapp by the railroad company or the appellee. The fact remains that he was notified by his employer, to whom Clapp had given the deduction order, that he was delinquent and that his premiums were not being paid.

As above stated, the contract here is a group policy. The rule announced in *Metropolitan Life Insurance Co. v. Thompson*, 203 Ark. 1103, 160 S. W. 2d 852, applies here. There we said: ''We, therefore, are of the opinion that it had the right to rely and act upon the report of Lion Oil as to whether any employee had ceased to be employed, and to cancel his certificate on the ground of non-employment, in the absence of collusion or fraud between it and Lion Oil. Nor was there any duty resting upon appellant to notify Thompson his certificate had

been canceled. Neither the group policy nor the certificate require it to do so."

We find no provision in the group policy or the certificate in the instant case requiring notice from appellee insurance company to the insured, Mr. Clapp.

In the instant case the railroad company was vitally interested in seeing that their employees maintained their insurance since, under the group policy, it was required to have 74 per cent. of its employees insured. The evidence shows that the railroad company endeavored to induce Mr. Clapp to reinstate his insurance and keep it in force, but this he refused to do and thus caused the policy in question to lapse.

It is also undenied in this case that subsequent to September 30, 1939, and beginning with October 16, 1939, until his death, all of Mr. Clapp's wages were paid to him regularly without any monthly pay roll deductions and certainly this was additional notice to him that his premiums were not being paid. In the recent case of *Millerick, Executrix,* v. *Benefit Association of Railway Employees,* 184 ms. op. April 27, 1942, p. 765, 160 S. W. 2d 852, we said: ". . . Mr. Millerick had the additional information that his premiums were not being paid from the fact that the monthly premium payments of $3.60 were not being deducted from his pay check on or after April, 1939, since he was drawing all the money due him. Certainly, therefore, he must have known that the railroad company was not paying his monthly premiums when all his wages were being paid to him."

On the whole case, finding no error, the judgment is affirmed.