LELA J. RIVERS v. STATE CAPITAL LIFE INSURANCE COMPANY.

(Filed 1 February, 1957.)

**1. Insurance § 32c—**

Even though a group insurance policy is executed between the employer and the insurance company, it is primarily for the benefit of the insured employees and their beneficiaries.

**2. Same—**

A provision in a certificate under a group policy that the certificate should terminate upon cessation of payment of premiums thereon when due or within the grace period thereafter, must be given effect in the absence of extension or waiver.

**3. Same—**

Tender of premiums under a certificate of group insurance to the employer does not prevent a lapse of the certificate for nonpayment of premiums in the absence of waiver or estoppel, since ordinarily the employer is not the agent of the insurer.

**4. Same—**

Insured is charged with notice of the provisions of his certificate under a group policy in regard to lapse for nonpayment of premiums and the absence of provision for paid-up insurance, cash or loan value.

**5. Insurance § 37: Trial § 24—**

Nonsuit may be granted upon an affirmative defense when plaintiff's own evidence establishes such defense as a matter of law, and therefore where plaintiff's own evidence establishes that the certificate of insurance sued on had lapsed for nonpayment of premiums, nonsuit is proper, notwithstanding defendant has the burden of establishing such defense.

**6. Insurance § 13a—**

Where the terms of an insurance policy are clear and unambiguous and of the essence of the contract, they will be interpreted and enforced according to the usual, ordinary and accepted meaning of the language.

WINBORNE, C. J., took no part in the consideration or decision of this case.

JOHNSON, J., not sitting.

APPEAL by defendant from *Crissman, J.,* March Civil Term 1956 of ROWAN.

This is a suit by plaintiff beneficiary to recover on a certificate of life insurance issued to Charlie C. Rivers by the defendant State Capital Life Insurance Company under a group insurance policy for employees of Linn Mills Company.

From a judgment on a verdict that the plaintiff recover $1,500.00 from the defendant, the defendant appealed.

*Robert M. Davis and John C. Kesler for Plaintiff, Appellee.*

*George R. Uzzell, Allen & Hipp, and Arch T. Allen for Defendant, Appellant.*

PARKER, J. Plaintiff's evidence tended to show the following facts: The defendant State Capital Life Insurance Company issued to Linn Mills Company for the benefit of its employees a group insurance policy No. 1300, and this policy, known as the master policy, was in full force and effect during the time alleged in plaintiff's complaint. When this group insurance policy was issued to Linn Mills Company, Charlie C. Rivers was, and had been for many years, an employee of Linn Mills Company. Under the group insurance policy the defendant on 16 August 1953 issued its group insurance certificate No. 130000625 to Charlie C. Rivers, called therein the insured, in the amount of $1,500.00, payable to his wife, Lela J. Rivers, the plaintiff, at his death, provided at such time the certificate of insurance was in force and effect. The premiums on the insurance certificate issued to Charlie C. Rivers were paid bi-weekly by Linn Mills Company, partly by deductions from Rivers' pay cheque, and partly by its contributions.

In November 1954 Charlie C. Rivers quit work with the Linn Mills Company by reason of a cold and rheumatism in his leg. From then

until his death on 5 June 1955, at the age of 64, he did not work for Linn Mills Company. Charlie C. Rivers continued to pay to Linn Mills Company his part of the premium on his insurance certificate due to the defendant from the time he stopped work in November 1954 until 22 February 1955, at which time he made his last bi-weekly payment. This payment covered the period up through the date of 12 March 1955.

In March 1955 Charlie C. Rivers gave Blanchard Carter a $10.00 bill, and asked him to go to Linn Mills Company and pay his insurance. Carter went into the office of Linn Mills Company with the $10.00 bill in his hand, and told Mrs. Shulenberger he wanted to pay Charlie C. Rivers' insurance. She said his insurance had expired. Carter replied, thank you, and walked out. Carter went back, and told Charlie C. Rivers a lady in the office said his insurance had expired. Rivers said: "It shouldn't have, I have been paying on it. I will be straight in a few days and I will go down and straighten it up."

J. D. Rivers, a son of Charlie C. Rivers, testified that subsequent to November 1954, his father made payments on his insurance to the mill, and sometimes his father gave him money to make the payments and he did. Sometime after Christmas, in the early part of January, he went to the mill office to make a payment, and Mrs. Shulenberger, taking the money, said: "I believe we terminated him." Then she got his record—"I guess it was a record"—and marked down on it that the insurance was paid. She tore up the termination slip. That payment paid the insurance up until the next pay day.

Plaintiff alleged in her complaint that Charlie C. Rivers had fully paid the premiums on his insurance "through March of 1955."

Defendant refused to pay plaintiff the face value of the insurance certificate, after notice of Charlie C. Rivers' death and demand for payment.

Plaintiff introduced into evidence the group insurance certificate No. 130000625.

At the close of plaintiff's evidence, the court denied the defendant's motion for judgment of nonsuit, and the defendant excepted.

The defendant then offered evidence as follows: Charlie C. Rivers last worked for Linn Mills Company in November 1954, and was not employed by the company, and did not receive any pay from it, at any time after that date. The employees of the mill can avail themselves of the provisions of the group policy if they want to. All of them have not done so. It is discretionary. Charlie C. Rivers chose to have insurance under the group policy. His premiums were paid by deducting 75 cents a week from his pay cheque and by the mill paying 46 cents a week. He had this insurance while he was employed. He made

a payment of $1.50 on his insurance certificate on 22 February 1955, which paid his insurance through 12 March 1955.

Mrs. Jo. Shulenberger, office manager for Linn Mills Company testified:

> "I did not have any conversation with Mr. Rivers about his employment. I don't remember who I talked to in March telling him that the policy of insurance had terminated, but we told them at the time that the insurance had terminated due to the fact that he had been away from work for 90 days. Our mill terminated the employment of Mr. Rivers on March 12, 1955. His name was left off the payroll. I don't know that he was advised to that effect by myself or my office. His name was left off the payroll March 12, 1955. No further premiums were received by me from him or any further premiums paid by my company for him or for the company to the State Capital Life Insurance Company for Charlie Rivers after March 12. On June 5, 1955, the date of the death of Mr. Rivers, he was not employed by the Linn Mills Company. I was not carrying his name on the list for insurance with the State Capital Life Insurance Company."

She further testified: "A notice was posted on the bulletin board about the insurance plan and also booklet explaining the whole thing. Each employee was given a little booklet with the insurance plan in it. . . . On 12 March 1955 we notified the insurance company that the insurance on Mr. Rivers was terminated." Mrs. Shulenberger did not give Charlie C. Rivers a copy of the termination of insurance or employment that she sent to the defendant.

The defendant received notice from Linn Mills Company that Charlie C. Rivers' employment with it was terminated on 12 March 1955. Since then it has not received any money from anyone as a payment on the premiums on Charlie C. Rivers' insurance certificate. As of 12 March 1955 it terminated his insurance certificate.

At the close of all the evidence defendant renewed its motion for judgment of nonsuit, which the court denied, and the defendant excepted. Defendant assigns as error the failure of the court to nonsuit the plaintiff.

The certificate of insurance issued to plaintiff's insured, and introduced in evidence by plaintiff, contains this language: "The insurance upon the life of any insured under the Group Insurance Policy shall cease automatically upon the occurrence of any one of the following events: . . . (b) the cessation of premium payments on account of such Insured's Insurance hereunder."

This certificate of insurance states that it is subject to the terms and conditions of the Group Insurance Policy issued to Linn Mills Company, which Group Insurance Policy contains this language: "The insurance hereunder of any Insured shall cease automatically upon the occurrence of any of the following events: . . . (2) the cessation of the premium payments on account of such persons insurance hereunder."

The certificate of insurance issued to plaintiff's insured also contains these words: "This certificate is merely evidence of insurance provided under said Group Insurance Policy, which insurance is effective only if the Insured is eligible for insurance and becomes and remains insured in accordance with the provisions, terms and conditions of the said policy."

The certificate of insurance issued to plaintiff's insured contains these words: "The insurance does not at any time provide paid-up insurance, cash or loan value." And also these words: "Upon receipt of satisfactory proof of death of the insured while insurance under the Group Insurance Policy with respect to such insured is in force, the Insurance Company will pay the amount of life insurance shown in the schedule on the first page to the beneficiary . . ." The Group Insurance Policy issued to Linn Mills Company has this Insuring Clause: "Upon receipt of due proof of the death of any person occurring while insured under this policy and while this policy is in force, the Insurance Company agrees to pay, at its Home Office in Raleigh, North Carolina, to the person or persons entitled thereto under the provisions of this policy, the amount for which such person's life is insured."

The Group Insurance Contract here was made by the defendant insurer and Linn Mills Company, instead of between the insurer and the insured employees of Linn Mills Company, and affects four parties —the insurer, the employer, the insured and the beneficiary. "It should be borne in mind, however, that group insurance is not indemnity insurance for the benefit of the employer, but insurance upon the life of the employee for his personal benefit and the protection of those depending upon him. . . ." 29 Am. Jur., Insurance, p. 1027.

This Court said in *Rees v. Ins. Co.*, 216 N.C. 428, 5 S.E. 2d 154: "It is generally understood that the nonpayment of a premium when due, or within the period of grace thereafter, in the absence of some extension or waiver, automatically avoids a policy of insurance." In *Allen v. Ins. Co.*, 215 N.C. 70, 1 S.E. 2d 94, it is said: "The payment of premiums is of the essence of the undertaking and upon its compliance depends the life and success of the insurance company."

In *Modlin v. Woodmen of the World*, 208 N.C. 576, 181 S.E. 559, the plaintiff was nonsuited, and a recovery of disability benefits under a beneficiary certificate issued to him by the defendant was held barred

by forfeiture of contract for nonpayment of dues prior to notice of disability.

*Dewease v. Ins. Co.,* 208 N.C. 732, 182 S.E. 447, was a suit to recover on a certificate of group insurance. Plaintiff claimed total disability. She was employed by Highland Park Manufacturing Company, and amounts sufficient to pay the premiums on her policy were deducted from her wages until 17 August 1931, when she was injured. Thereafter she ceased to be employed, and no further payments were made on the policy. The master policy was cancelled 27 May 1932. Her suit was nonsuited below. On appeal the nonsuit was affirmed, this Court holding that she was not entitled to disability benefits when proof of disability was not given while the policy was in force. See also *Johnson v. Ins. Co.,* 207 N.C. 512, 177 S.E. 646.

When the insured employee under a Group Insurance Policy is required to contribute to the premiums, and the master policy and the certificate thereunder issued to him state that the insurance upon the life of any insured under the Group Insurance Policy shall cease automatically upon the cessation of premium payments on account of such insured's insurance under the master policy, his certificate of insurance becomes lapsed, if he ceases to pay further periodic premiums when due, or within the period of grace thereafter, and by reason thereof there is a nonpayment when due of the premiums to the insurance company, in the absence of some extension or waiver. *Clapp v. Sun Life Assur. Co. v. Canada,* 204 Ark. 672, 163 S.W. 2d 537; *Peyton v. Equitable Life Assur. Soc. of U. S.,* 159 Pa. Super. 318, 48 A. 2d 145; *Jensen v. John Hancock Mut. Life Ins. Co.,* 266 Wis. 595, 64 N.W. 2d 183; *McClain v. Provident Life & Accident Ins. Co.,* 65 Ga. App. 355, 16 S.E. 2d 173; 45 C.J.S., Insurance p. 451.

There is no contention by plaintiff of any payment of premiums within the grace period of 31 days, or after the payment on 22 February 1955 to pay the insurance through 12 March 1955. Plaintiff alleges that Charlie C. Rivers has paid his insurance "through March of 1955." Her evidence shows that his last payment of premiums on 22 February 1955 paid his insurance through 12 March 1955, and that he died 5 June 1955. The grace period is not material here.

Plaintiff contends that the insurance on the life of her insured did not lapse, because of cessation of premium payments on account of the certificate issued to her insured, for the reason Charlie C. Rivers tendered payment in March 1955 to Linn Mills Company of his part of the premium due, and such payment was refused, and that such tender of payment was sufficient to prevent a forfeiture of the policy. Plaintiff cites in support of her contention cases where the tender was made to the insurance company. Such cases are not in point, for here the tender was made not to the insurance company but to the office manager

of Linn Mills Company. It is to be noted that plaintiff has not pleaded any waiver or estoppel in respect to such alleged tender. *Wright v. Ins. Co.*, 244 N.C. 361, 93 S.E. 2d 438.

While it is true that there is a diversity of opinion among the several jurisdictions as to whether in the case of Group Insurance Policies, the employer occupies the role of agent of the employees or of the insurer (Appleman Insurance Law & Practice, Vol. 1, sec. 43), it is definitely held with us that "the employer in a group insurance policy is not ordinarily the agent of the insurance company." *Dewease v. Ins. Co., supra; Haneline v. Casket Co.*, 238 N.C. 127, 76 S.E. 2d 372. And in *Haneline v. Casket Co., supra,* our Court quoted from *Boseman v. Conn. Gen. L. Ins. Co.*, 301 U.S. 196, 81 L. Ed. 1036, 110 A.L.R. 732, as follows: "Employers regard group insurance not only as protection at low cost for their employees but also as advantageous to themselves in that it makes for loyalty, lessens turn-over and the like. When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves." The U. S. Supreme Court in support of this statement cites in a note to the opinion a number of cases, included in which is our case of *Dewease v. Ins. Co., supra.* To the same effect see 44 C.J.S., Insurance, p. 800.

Whether Charlie C. Rivers tendered the Linn Mills Company, or its office manager, the premium due by him on his insurance for March 1955 is of no consequence, as Linn Mills Company was not an agent for defendant insurance company, and Linn Mills Company's refusal of the tender does not bind the defendant insurance company, and prevent it from declaring a forfeiture of the policy for nonpayment of premiums. *Magee v. Sun Life Assur. Co. of Canada,* 182 Miss. 287, 180 So. 797; *Hanaieff v. Equitable Life Assur. Soc. of U. S.,* 371 Pa. 560, 92 A. 2d 202; *Keane v. Aetna Life Ins. Co. of Hartford, Conn.,* 22 N. J. Super. 296, 91 A. 2d 875; *Duval v. Metropolitan L. Ins. Co.,* 82 N.H. 543, 136 A. 400, 50 A.L.R. 1276; *Leach v. Metropolitan L. Ins. Co.,* 124 Kan. 584, 261 P. 603, rehearing denied 125 Kan. 129, 263 P. 784; *Metropolitan Life Ins. Co. v. Thompson,* 203 Ark. 1103, 160 S.W. 2d 852; *Magee v. Equitable L. Assur. Soc. of the U. S.,* 62 N.D. 614, 244 N.W. 518, 85 A.L.R. 1457; 29 Am. Jur., Insurance, sec. 1379.

This Court said in *Moore v. Accident Assurance Corp.,* 173 N.C. 532, 92 S.E. 362: "And it is true that the insured is charged with notice of the terms of the policy affecting his rights under it, and among them, is the one as to the payment of premiums."

Charlie C. Rivers was charged with notice of the words in the certificate of insurance issued to him that his insurance did not at any time

provide paid-up insurance, cash or loan value. He knew he was not working after November 1954, and that he had earned no wages from which Linn Mills Company could deduct an amount to pay his part of the premiums due on his insurance. He knew from the plain language of the insurance certificate issued to him upon his life, that the insurance would cease automatically upon the cessation of premium payments, because he made the payments through 22 February 1955. In *McClain v. Provident Life & Accident Ins. Co., supra,* it is said: "It has been held that where the contract of insurance provides for the payment of premium installments from wages earned during a specified time, and there are not earned sufficient wages during that time with which to pay the installments, the policy will lapse. See 67 A.L.R. 180, 181, 185 *et seq.* However, in the present case, no wages were earned, and the employee was not working at the time of his death. See 67 A.L.R. 193, 194; 85 A.L.R. 755."

Plaintiff's evidence affirmatively shows that Charlie C. Rivers' certificate of insurance had ceased automatically and lapsed at the time of his death by reason of nonpayment of premiums, since the last payment of premiums was in February 1955 paying the insurance through 12 March 1955, and that Charlie C. Rivers died on 5 June 1955, and there is no evidence of any extension or waiver by the defendant.

However, plaintiff contends that the defendant having alleged nonpayment of premiums as a defense has the burden of sustaining the allegation by proper proof, and that a judgment of nonsuit is never permissible in favor of the party having the burden of proof upon evidence offered by him. She cites in support of her contention. *Barnes v. Trust Co.,* 229 N.C. 409, 50 S.E. 2d 2. There is one exception to this rule, which is stated in *Hedgecock v. Ins. Co.,* 212 N.C. 638, 194 S.E. 86: "When the plaintiff offers evidence sufficient to constitute a *prima facie* case in an action in which the defendant has set up an affirmative defense, and the evidence of the plaintiff establishes the truth of the affirmative defense as a matter of law, a judgment of nonsuit may be entered." Plaintiff's evidence brings her case within the exception, when a judgment of nonsuit may be entered.

The extended death benefit provision of the insurance is not relevant to the facts of the case. Plaintiff does not contend in her brief that it has any application.

The conversion privilege clause of the policy affords no relief to the plaintiff, and she does not contend that it does. If this clause did apply to the facts, which we do not concede, Charlie C. Rivers made no effort to avail himself of it. This Court said in *Pearson v. Assurance Society,* 212 N.C. 731, 194 S.E. 661: "It (the conversion privilege clause) grants the insured employee a privilege or option under certain conditions therein stipulated. The insured did not exercise this option or privilege

by applying for such policy or by paying the required premium. The plaintiff, therefore, has no claim against the defendant by reason of the terms of this provision." See also *Adkins v. Aetna Life Ins. Co.*, 130 W. Va. 362, 43 S.E. 2d 372.

The terms of the insurance certificate issued to Charlie C. Rivers and of the master policy as to nonpayment of premiums are plain, clear and unambiguous, and of the essence of the contract, and they will be interpreted and enforced according to the terms of the policy in their usual, ordinary and accepted meaning. *Lineberger v. Trust Co.*, *ante*, 166, 95 S.E. 2d 501; *Haneline v. Casket Co.*, *supra*; *Motor Co. v. Ins. Co.*, 233 N.C. 251, 63 S.E. 2d 538. "It is our duty to construe policies of insurance as written, and not to rewrite them." *Scarboro v. Ins. Co.*, 242 N.C. 444, 88 S.E. 2d 133.

The lower court erred in overruling defendant's motion for judgment of nonsuit.

Reversed.

WINBORNE, C. J., took no part in the consideration or decision of this case.

JOHNSON, J., not sitting.