THE CHAMPION MACHINE COMPANY v. LAWSON MANN
et al.

1. HARVESTER — *Conditional Warranty* — *Offer to Return* — *Refusal to Accept.* Under a conditional warranty on the sale of a harvester, the purchaser agreed to return it to the seller if it failed to do its work properly. After a trial of the machine, and its failure, the purchaser is relieved from his agreement to return it when, on an offer to do so, the seller told him he would not accept it.

2. ———— *Sufficient Notice to Company.* Where it is also provided in the conditional warranty of the sale of the harvester, that if after trial it failed to do good work, the purchaser must give immediate notice in writing at the office of the company at Springfield, Ohio, subject to a second trial in its presence, and no such notice is given, but the manager of the company's western office at St. Joseph, Missouri, did personally direct and supervise the operation of the machine after it failed to do good work, this would be sufficient notice to the company that it did not comply with the warranty.

*Error from Atchison District Court.*

ON the 28th of June, 1881, the defendants in error, who were plaintiffs below, purchased at St. Joseph, Missouri, of J. P. Quigley, manager of the western branch office of defendant company, a Champion harvester and cord binder, and on the same day took it to the farm of one of the defendants, near Troy, Kansas. At the time of the sale the company made this conditional warranty:

"This machine is warranted to be of good material and well made, and if properly operated according to directions, will do good work under all ordinary circumstances, and is warranted to do as good work under all circumstances as any

other harvester binder.    But it is expressly understood that
this warranty is of no effect unless the machine is properly
set up and operated according to our directions.    If said ma-
chine does not perform as above, immediate notice must be
given to the Champion Machine Company, Springfield, Ohio,
subject to a second trial in their presence, and under their
direction.    When the failure is not found to have arisen from
any defect in the machine when properly adjusted and used,
the machine fills the above warranty, and it shall be kept by
the purchaser.    But if upon the second trial said machine
does not work as above, it may be returned to us, and the
payments made will be refunded."

Quigley and a man in his employ went to the farm of Mann
and set up the machine.    A day or two after this the plain-
tiffs executed two notes to the company, and delivered them
to Quigley.    These notes contained some provisions that the
plaintiffs objected to when they were executed, and in com-
pliance with the understanding of the parties they were after-
ward returned to them, and upon the 11th of July they gave
new notes instead.    These notes were afterward collected by
suit, they having been assigned to an innocent purchaser be-
fore due.  (*Mann v. National Bank*, 34 Kas. 746; *Mann v.
National Bank*, 30 id. 412.)   The plaintiffs used the machine,
cutting a part of their grain, but before all of it was harvested
it was taken from the field to near the house of one of the
plaintiffs.    The evidence fairly shows that it did not do satis-
factory work, the testimony of plaintiffs being very positive
and voluminous on that point; and that on behalf of defend-
ant shows that four or five different men were sent from St.
Joseph to attempt to put it in good order, some of them going
as often as three or four times.    Near the last of July, Mann
went to St. Joseph and told Quigley that the machine was not
and had not been satisfactory, and that they would not keep
it.    There are quite different versions of this conversation be-
tween these parties, but the jury found that Mann offered to
return the machine to Quigley at St. Joseph, and he refused to
accept it.    This action was brought to recover the damages
that plaintiffs claimed they had sustained.    At the November

term, 1886, it was tried by the court and a jury, and a verdict was returned for plaintiffs for $389.11, and a judgment rendered thereon. *The Company* brings the case to this court.

*J. C. Tomlinson, S. L. Ryan,* and *Frame & Bland,* for plaintiff in error.

*W. D. Webb,* for defendants in error.

Opinion by HOLT, C.: The defendant complains that there was no return of the machine and no written notice given the company at Springfield, Ohio, as provided for in the warranty. The plaintiffs' excuse for not returning the machine to St. Joseph, Missouri, was, that Quigley said he would not accept it if it should be returned. Upon conflicting evidence the jury found that Mann offered to return the machine, and Quigley refused to accept it. We are unwilling to disturb that finding. It would have been an idle and fruitless thing to have taken the machine to Quigley at St. Joseph, after the statement he had made to Mann. His declaration that he would not accept it, and that plaintiffs must keep it, was sufficient to excuse them from returning it. (*Ritchie v. Huntington,* 7 Kas. 250; *Raper v. Harrison,* 37 id. 243; *Bogle v. Gordon,* 39 id. 31.)

It is a conceded fact that no written notice was sent to the company at Springfield, Ohio. It is shown beyond any question, that Quigley, who testified himself that he is the manager of the branch office at St. Joseph, was present at two trials of the machine; and it also appears in evidence that a Mr. Pence, from Springfield, Ohio, came to St. Joseph and was sent out by Quigley to see the machine work. It is not proven that he was sent from the home office for this purpose, or what his authority or power might have been in the matter, except it is stated that he was the manufacturer of the cord binder, which gave a great deal of trouble in binding the grain. He attempted to fix the machine, and did make it work better temporarily. The plaintiffs claim, however, that the knowledge of Quigley of the fact that the machine failed to do good

work, and that the second trial was made under his direction, answers substantially all the stipulations of the warranty in regard to notice of the defendant at Springfield, Ohio. The court evidently took this view of the case, and in its instructions to the jury called their attention to this warranty, and said:

"It was also provided in the contract of warranty that if the machine did not perform properly, then immediate notice should be given to the Champion Machine Company, Springfield, Ohio, subject to a second trial in their presence and under their direction, when, if the failure should be found not to have arisen from any defect in the machine when properly adjusted and used, and the machine filled the warranty, then it should be kept by the purchasers. If, however, you find that the machine was set up and operated under the directions of J. P. Quigley, the general agent and manager of the defendant's branch house in St. Joseph, and the workmen whom he sent, and that the same failed to do good work, or was defective as charged in the petition of the plaintiffs, and that the said J. P. Quigley and his workmen knew of said failure, and the plaintiffs expressed dissatisfaction with the machine, and that said J. P. Quigley and his workmen continued to direct the operations of the machine until its use was abandoned by the plaintiffs, this would be sufficient notice to the defendant of the plaintiffs' claim that the machine did not comply with the terms of said warranty."

The defendant's objection to this instruction is, that notice to Quigley was not equivalent to a notice on defendant at Springfield, Ohio. The general rule is, when a third party is concerned, that notice to the agent is notice to the principal, if the agent receives notice while he is acting for the principal in the particular business in which notice is necessary. The defendant claims that this rule does not apply in this case, by reason of the express stipulation in the warranty that the notice shall be given to the home office of the defendant at Springfield, Ohio; and it relies upon *Furneaux v. Esterly*, 36 Kas. 530. In that case, as in this, a machine was sold upon a conditional warranty, which provided that the purchaser should have time to test the machine, and if it did not do good work,

to notify in writing the agent, and also Esterly & Son, White-water, Wisconsin. In that case Furneaux purchased the machine of the local agent, who stated that he never had any correspondence with Esterly & Son, but did his business with Mr. Leffingwell, a distributing agent at Kansas City, Mo. In the written warranty there was this stipulation: "No agent has any authority to change this warranty." Leffingwell himself testified that though he termed himself a general agent, he had no authority to change the terms of the warranty or contract, but on the contrary, he had instructions not to change it. Furneaux kept the machine through two harvests before he returned it. In this case Quigley was the manager of the branch office at St. Joseph, and had such general authority to act for the company that he hired and discharged hands without consultation with the home office. There was no testimony, either from Quigley himself or from the officers of the company, that there was any limitation of his authority as manager. As such manager of the branch office he had full power to sell machines and receive those which should be returned to him as unsatisfactory, and refund what might have been paid upon them. It naturally follows that he would have the authority to test them and determine whether they would do good work when properly adjusted and operated. The only possible limitation on his authority arising from the evidence is the provision in the conditional warranty, that "Immediate notice must be given to the Champion Machine Company, Springfield, Ohio, subject to a second trial in their presence and under their direction" if the machine failed to operate properly. As we have stated before, no such notice was sent by plaintiffs to Springfield, but Quigley repeatedly sent out men employed by him for the company, from the branch office at St. Joseph, Mo., and also one who came from the home office, to adjust the machine and see how it did its work. Two trials were had before Quigley and under his personal supervision. He evidently believed that he had authority to determine whether it filled the warranty. We believe all these circumstances and his repeated assumptions of

authority indicate that he could test the machine, examine its work, and decide for the company whether he should receive it when it might be returned to him as unsatisfactory. Having this authority impliedly from the company, his voluntary and repeated appearances in the field to see it operate made any notice to the company either at Springfield or elsewhere unnecessary.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.