No. 37,474

EVANGELYN BROWN and JOSHUA W. BROWN, *Appellants*, v. METRO-POLITAN LIFE INSURANCE COMPANY, *Appellee*.

(203 P. 2d 150)

Opinion filed March 5, 1949.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark* and *Jason K. Yordy,* both of Salina, were with him on the briefs for the appellants.

*H. G. Engleman,* of Salina, argued the cause, and *B. I. Litowich, LaRue Royce, E. S. Hampton, H. H. Dunham, Jr.,* and *John Q. Royce,* all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action by the beneficiaries named in a certificate issued to Merrill W. Brown, under a group policy of insurance executed and delivered by the Metropolitan Life Insurance Company to the Southwestern Greyhound Lines, Inc., for the benefit of its employees, against the insurance company to recover permanent disability benefits. The cause was tried by a jury which returned a general verdict for the defendant, together with answers to special questions, and judgment was rendered accordingly. Plaintiffs appeal from such judgment and the order of the trial court overruling their motion for a new trial.

A proper understanding of the issues involved as well as their determination depends upon a full and complete statement of the facts giving rise to this lawsuit. For that reason, after having carefully reviewed a lengthy and tedious record and before referring to the pleadings or attempting to define the issues, the factual picture as we have been able to glean it from the testimony of various witnesses and numerous exhibits will be set out as briefly as the conditions with which we are confronted in describing it will permit.

The plaintiff Evangelyn Brown is the widow and the plaintiff Joshua W. Brown, the son of Merrill W. Brown, deceased, and both are named as beneficiaries in the involved insurance certificate.

Metropolitan Life Insurance Company, the defendant, hereinafter called Metropolitan or the company, is a corporation engaged in the insurance business and executed such certificate.

Southwestern Greyhound Lines Inc., hereinafter referred to as Greyhound, is a corporation engaged in interstate motor transportation business with a local office at Salina, Kan. Notwithstanding Greyhound procured and is the holder of the group policy under which the certificate was issued, Merrill W. Brown, the person covered by the terms of the latter instrument, will be identified as the insured.

Effective June 30, 1935, Metropolitan delivered to Greyhound a group policy of insurance for the benefit of its employees, present and future, the premiums on which were to be paid by Greyhound. Such policy contained myriad terms and provisions many of which are not abstracted. In substance, those appearing in the record and deemed material provide:

1. Employees became insured, in amounts determined by salary and occupational class as provided by schedule, only by making written application on forms furnished by Metropolitan. Insurance so procured was discontinued as of the date each left the employ of Greyhound.

2. Temporary disability insurance on any disabled employee, who had received benefits for the maximum number of weeks specified by the policy, discontinued at the expiration of such period, but insurance of such employee was reinstated when he returned to active work on full time and for full pay.

The insurance clauses of such group policy are three-fold. They provide for payment of death benefits and temporary disability benefits under conditions and circumstances which need not be here related in detail since plaintiffs predicate their right to benefits upon the clause fixing liability for permanent disability. Such clause reads:

"Upon receipt by the Company of due notice and proof—in writing—that any Employee, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit, the Company shall discontinue the Life Insurance in force on the life of said Employee and three (3) months after receipt of such proof, shall commence to pay, subject to the Terms hereof, in lieu of the payment of Life Insurance at his death, monthly installments as defined below to the said Employee or to a person designated by him for the purpose; . . . and the Company shall continue such payments for the period provided below, should said Employee continue totally and permanently disabled . . . The amount of each installment will be such as the amount of Life Insurance in force on the life of said Employee at the date of receipt of proof of such disability, or at the date of termination of Life Insurance *if proof be received later and within a year* will purchase as of the due-date of the first installment, on the basis of three. . . . For amounts of insurance in excess of $1,500.00, the number of monthly installments shall be sixty (60) and the amount of each installment shall be on the basis of $18.00 per month for each $1,000.00 of insurance." (Emphasis supplied.)

The insured was first employed by Greyhound on September 19, 1929, as a driver or operator of passenger buses, which employment continued until it was terminated by such employer on June 1, 1944. April 30, 1941, he made application for insurance under the terms and conditions of the employer's group policy. His application was duly accepted and thereafter the company issued him a certificate, later supplemented by amendment, whereby it certified that in accordance with the terms and conditions of the master policy, he was

insured for $4,900 for life insurance, $3,000 for accidental death and dismemberment insurance and for benefits of $25 per week for 13 weeks of temporary disability.

In addition such certificate provided that in case of termination of employment of the insured for any reason whatsoever his insurance immediately ceased but that he was then individually entitled, upon application therefor and payment of the premium applicable to the risk to which he belonged without evidence of insurability, to a policy of life insurance in any one of the forms customarily issued by the company, except term insurance, in an amount equal to insurance theretofore in force and effect on his life under the group policy certificate.

Another clause appearing in the certificate, which we pause to note, plaintiffs state is the one upon which they base their cause and for that reason is quoted at length, reads:

"The Group Policy mentioned on page one of this Certificate provides the benefits specified below in the case of any Employee *who furnishes due proof to the Company, within one year after the termination of his Life Insurance,* that, while insured thereunder and prior to his 60th birthday, he has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit.

"Three months after receipt of such proof, the Company shall commence to pay to such Employee or, in case of insanity, as provided in said Group Policy, in lieu of the payment of the Life Insurance under said Group Policy at his death, equal instalments depending upon the amount of Life Insurance in force on the life of such Employee at the date of receipt of such proof or at the date of termination of the Life Insurance, if proof be received later, as shown in the following table.

(Table omitted)

"For amounts of insurance in excess of $1,500.00, the number of monthly instalments shall be sixty (60) and the amount of each such instalment shall be on the basis of $18.00 per month for each $1,000.00 of insurance.

"Such instalment payments shall be made only during the continuance of such disability.

"In the event of the death of the Employee during the period of total and permanent disability, any instalments remaining unpaid shall be . . . paid to the Designated Beneficiary. . . ." (Emphasis supplied.)

May 10, 1943, the insured became disabled with prostatitis which rendered him unable to perform any of the duties of his employment from that date until June 12, 1943. He made claim in writing for temporary disability on the form furnished by Metropolitan, naming prostatitis as the cause of his disability, and was paid temporary

benefits from May 13 to June 11 according to the terms of the certificate. He resumed performance of his regular duties on June 12 and continued to perform them until July 17. On such date he again became disabled and once more made written claim for temporary disability. In this claim he stated that his disability was due to prostatitis and neuritis of the shoulder. In forwarding it Greyhound's claim agent stated: "We submit herewith a statement of claim for group health benefits on behalf of our employee Merrill Wilson Brown. You will note this illness is related to the illness which resulted in Mr. Brown's disability from May 9 to June 12, 1943." This claim was received by Metropolitan on August 9. Two days later, it wrote Greyhound as follows: "The statement made by the attending physician on the claim form indicates that the present disability is a continuance of the sickness recently suffered by this employee. We are, therefore, approving this claim as a continuation of the previous one, waiving the waiting period and paying the benefits from the first day of disability on the latest claim. We are enclosing our check for benefits through August 7, 1943." Metropolitan paid temporary disability benefits from July 17 to September 15, inclusive, at the rate of $25 per week, a total of 13 weeks which, under existing terms of the certificate, was the extent of its liability for temporary disability.

On August 12, Metropolitan requested Greyhound to furnish a report of Brown's condition. This request was forwarded by the latter to the physician making the original report. He did not reply until September 21, after the temporary disability payments had all been made. When he did so he reported the insured was partially disabled, that his present disability was due to "neuritis," that since his original report he had observed a new complication which he attributed to "partial auricular ventricular block," and that the time within which his patient would be able to work was "undetermined." This report was received by Metropolitan on October 5. From that time until June 1, 1944, it had no communication with anyone concerning the insured's condition.

June 1, 1944, the insured's employment with Greyhound was terminated and Metropolitan was notified of that fact immediately. Following termination of his employment with Greyhound he made no application to Metropolitan to convert his certificate into an individual policy of insurance and after June 1, 1944, neither he nor anyone else paid for insurance of any kind to Metropolitan for and on his behalf.

From June 1, 1944, until March 20, 1946, neither Merrill Brown nor anyone else ever made any claim, gave any notice or made any proof that Brown was suffering from a total permanent disability or that he claimed to be suffering therefrom and during that period of time Metropolitan had no communication of any kind with anyone concerning him.

Merrill Brown died on January 2, 1946, of coronary heart disease. On March 20 following Evangelyn Brown made written proof of his death on form furnished by Metropoiltan, showing such disease was the cause of his death. This proof was forwarded to Greyhound and by it transmitted to Metropolitan which subsequently denied any liability whatsoever under the certificate. Thereupon, after refusal of their demand the company pay them permanent disability benefits under the terms of the certificate, the beneficiaries named therein commenced this action.

What has been heretofore stated obviates detailed relation of the pleadings and permits the brief statement that under their allegations the issues are: (1) Whether Merrill W. Brown, while in the employ of Greyhound and while his insurance was in force and effect, became totally and permanently disabled as a result of disease so as to be prevented thereby from engaging in any occupation and performing any work for wage and profit; and (2) if he did become so totally disabled: (a) whether Metropolitan was given such notice and proof of permanent disability as would make it liable under the terms of the insurance contract, or (b) if notice and proof of disability was not given in conformity therewith whether it was waived by the insurer.

Heretofore we have indicated the general nature of this appeal. It can now be stated the issues raised thereby are not nearly so complicated as our factual statement and the numerous contentions advanced by the parties might indicate.

Above all else it must be kept in mind this action is predicated upon an insurance contract the terms of which are binding upon the parties and cannot be changed by the courts. Indeed, unless the provisions in question are ambiguous, the rule is they are not susceptible of judicial interpretation but must be construed in their ordinary sense (*Watkins v. Metropolitan Life Ins. Co.*, 156 Kan. 27, 29, 131 P. 2d 722; *Bott v. Equitable Life Assur. Society*, 147 Kan. 671, 78 P. 2d 860; *Lane v. Insurance Co.*, 109 Kan. 296, 198 Pac. 948; *Spence v. New York Life Ins. Co.*, 154 Kan. 379, 118

P. 2d 514). What then does the policy require? Upon resort to portions thereof, heretofore quoted, we have little difficulty in concluding that in clear and unambiguous language it provides the Metropolitan was only to be liable for disability benefits, in lieu of death benefits, upon receipt of written notice and proof that the insured, while in the employ of the Greyhound and while the policy was in full force and effect, had as a result of disease become totally and permanently disabled from performing any work or profit and that such notice and proof must be received while the policy was in full force and effect or within one year thereafter.

That requirements of the character just described are enforceable and to be construed as conditions precedent to the recovery of disability benefits under an insurance policy of the kind here involved is no longer an open question in this jurisdiction (See *Bowling v. Illinois Bankers Life Ass'n.*, 141 Kan. 377, 41 P. 2d 1012; *Bott v. Equitable Assur. Society*, supra; *Smith v. Missouri State Life Ins. Co.*, 134 Kan. 426, 7 P. 2d 65; *Bozich v. Metropolitan Life Ins. Co.*, 155 Kan. 573, 583, 127 P. 2d 499; *Wead v. Aetna Life Ins. Co.*, 160 Kan. 274, 277, 160 P. 2d 258).

Under the foregoing rules it is apparent appellants were required to sustain the burden of establishing compliance with the requirements of the contract respecting the conditions under which Metropolitan was to become liable for permanent disability. That they sustained a portion of this burden must be conceded. By its Findings 5 and 6, on disputed testimony, the jury found in effect that the insured, before termination of his employment and while in the employ of Greyhound, had become totally and permanently disabled from performing any work for wage or profit as a result of heart disease. The appellee does not cross appeal and is therefore bound by such findings. But that is not enough. Before they could hope to recover, since it is conceded Merrill Brown never converted the certificate into an individual policy, appellants were obliged to also establish (1) Metropolitan had received notice and proof in writing while Brown was insured under the group policy and certificate or within one year after June 1, 1944, the date his insurance thereunder ceased by reason of termination of his employment with Greyhound, that he had become totally and permanently disabled as a result of disease prior to such date, or (2) that Metropolitan had waived the furnishing of such written notice and proof. On these points by its answers to special questions 1 and 3,

as submitted by the trial court, the jury found that Metropolitan had neither received nor waived either notice or proof.

In an effort to avoid the effect of the answer to question 1 appellants argue the contents of the notices and proofs of temporary disability, referred to in our factual statement, included notice and proof of permanent disability and that therefore the trial court should have held that as a matter of law they constituted notice and proof of permanent disability in conformity with the contract. They also insist waiver of such notice and proof was likewise established by undisputed evidence. Otherwise stated, their claim is that neither of such questions was for the jury. We do not agree. Without more ado it will suffice to say we have painstakingly examined all the evidence and have not only decided questions 1 and 3 pertained to disputed questions of fact and were properly submitted but also concluded that the answers made thereto are supported by substantial competent evidence.

Appellants suggest Findings 5 and 6 require judgment *non obstante*. Their position on this point has no merit. The fact the jury believed the insured contracted heart disease and as a result became totally incapacitated while the insurance was in force and effect did not do away with requirements of the policy pertaining to notice and proof. Hence it could properly return a general verdict predicated upon the premise appellants had failed to establish compliance with conditions precedent to any right of recovery under the terms of that instrument.

It is urged the trial court erred in holding throughout the course of the trial that Greyhound was the agent of the insured and his beneficiaries in all transactions with Metropolitan concerning the insurance contract. The evidence on this point is not controverted. Its force and effect is all that is in question. After reviewing all of such evidence, most of which is in written form, we are convinced that under all the facts and circumstances it discloses the trial court's ruling on this point was proper. Our conclusion in this respect is supported by *Leach v. Metropolitan Life Ins. Co.*, 124 Kan. 584, 261 Pac. 603, and other decisions cited in its opinion.

Rulings with respect to the admission and rejection of evidence are also assigned as error. Practically all of appellants' contentions with respect thereto fall of their own weight by reason of our conclusion on the issue of agency. Those not so determined have been given consideration and rejected.

We find nothing in the record which justifies the setting aside of the verdict of the jury or permits a reversal of the judgment denying recovery under the policy. Such judgment is therefore affirmed.

ARN, J., not participating.