No. 39,311

Oscar Lyon and Dale Lyon, Individually and as Partners doing business as Salina Coffee House, *Appellants,* v. Kansas City Fire and Marine Insurance Company, a corporation, *Appellee.*

(271 P. 2d 291)

Opinion filed June 12, 1954.

*John I. Young,* of Salina, argued the cause, and *Horace A. Santry,* of Salina, was with him on the briefs for the appellants.

*John Q. Royce,* of Salina, argued the cause, and *LaRue Royce, E. S. Hampton, H. H. Dunham, Jr., H. G. Engleman,* and *C. Stanley Nelson,* all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: Plaintiffs, Oscar Lyon and Dale Lyon, doing business as the Salina Coffee House, instituted an action on an insurance

policy to recover for the loss of an automobile on the theory it was lost by theft. Judgment was for the defendant insurer and plaintiffs appeal.

In view of this court's conclusions it is deemed unnecessary to narrate the testimony of the various witnesses. The district court made conclusions of fact and law, including pertinent terms of the policy. Exclusive of terms of the policy the pertinent facts as found are:

"6. In December, 1947, plaintiff, Dale Lyon, with the express consent of his co-partner, Oscar Lyon, took said automobile to California for the sole purpose of selling said automobile.

"7. Not having received what he considered a satisfactory bid for said automobile said Dale Lyon, on December 21, 1947, started back from the area of Los Angeles, California, to return to Salina, Kansas.

"8. In the early morning of December 22, 1947, at Wickinburg, Arizona, said Dale Lyon approached and opened negotiations with one Theodore Roosevelt Morris, also known as Ted Morris, and offered to sell said station wagon to him.

"9. As a result of said negotiations said plaintiff, on behalf of the Salina Coffee House agreed to sell, and said Morris agreed to buy said automobile for $2650.00.

"10. On December 22, 1947, at Wickinburg, Arizona, the said Dale Lyon voluntarily endorsed, assigned and delivered the Kansas certificate of title to said automobile to said Morris, and delivered the possession of said automobile to said Morris, and said Morris simultaneously executed and delivered to said Dale Lyon a check dated December 26, 1947, drawn on the Valley National Bank of Wickinburg, Arizona, payable to the order of the Salina Coffee House in the amount of Two Thousand Six Hundred Fifty ($2650.00) dollars.

"11. Said Dale Lyon knew at the time said check was drawn by the said Morris, that said Morris did not have funds on deposit in said Valley National Bank to cover the amount of said check.

"12. Morris did not have any funds in said Valley National Bank, and did not deposit or transfer any funds to said bank, and did not intend that said check should ever be paid, and he has never paid plaintiffs for said automobile.

"13. On December 24, 1947, said check was deposited in the Planters State Bank of Salina, Kansas, to the account of the Salina Coffee House.

"14. On January 9, 1948, plaintiffs were advised by an officer of said Planters State Bank that said check had been returned with the notation that the Valley National Bank, Wickinburg, Arizona, had no account for said Morris.

"15. On January 10, 1948, plaintiff Oscar Lyon, in company with an attorney, left Salina and went to Wickinburg, Arizona, and San Pedro, California, in an effort to locate said Morris and said automobile, and expended $326.10 on said trip.

"16. On January 13, 1948, said Oscar Lyon learned from the sheriff at Phoenix, Arizona, that Morris was wanted by state and federal authorities, and so advised Dale Lyon by long distance telephone.

"17. On February 9, 1950, plaintiffs contacted said Otho Schmidt and told him the general story of what had occurred in connection with the automobile and said that while they understood that the matter was not covered under the policy of insurance, they would like to have the help of the insurance company in locating the automobile; the question of insurance coverage was discussed and Mr. Schmidt stated that it was his opinion such a loss was not covered under the terms of the policy, but stated that he would write the insurance company and ask if it could assist in locating the automobile. As a result of this conversation the letter, dated February 9, 1948, (Exhibit C) was written and a copy of said letter was received by the plaintiffs.

"18. Otho Schmidt at no time denied liability under said insurance policy but did state that it was his opinion that there was no coverage.

"19. The letter, Exhibit D, dated February 12, 1948, was in reply to the letter Exhibit C, and was received by said Otho Schmidt on February 13, 1948, and a copy of said letter was by him given to plaintiffs on February 14, 1948. This letter was not intended to be a denial of liability under the policy.

"20. On December 26, 1947, Morris sold said automobile to one Alfred A. Thibault, at Newburyport, Massachusetts, and re-assigned the Kansas certificate of title to him.

"21. Shortly after February 9, 1948, plaintiffs learned the location of said automobile in Newburyport, Massachusetts, but took no action to recover possession of said automobile and have voluntarily abandoned said automobile.

"22. There has been no waiver or change of any of the terms or conditions of said policy of insurance.

"23. No proof of loss was filed within sixty days of December 22, 1947, nor within sixty days of January 9, 1948, nor within sixty days of January 13, 1948; nor has any proof of loss ever been filed with the defendant, and the time for filing proof of loss has never been extended in writing by the company or in any other manner.

"24. The value of said automobile on December 22, 1947, was $2600.00."

The court, in substance, concluded: Proof of loss as required by the policy was a condition precedent to the right of recovery; appellants did not make proof of loss; there was no intention on the part of appellee to deny liability and there was no such denial within the time provided for filing proof of loss; appellee did not waive proof of loss and this was not the type of loss contemplated by the terms of the policy but was excluded thereby.

Other conclusions of law relative to who presently had title to the car and whether appellants were barred from recovery by reason of abandoning the car after locating it in Massachusetts need not, in our opinion, be considered.

Appellants assert the first question is whether the policy covers the loss as a theft or larceny under the facts of this case. Appellants argue it does and rely on *Motor Co. v. Insurance Co.*, 111 Kan. 225, 207 Pac. 205, in which it was held,

"Under a contract of insurance issued to protect a dealer in automobiles against 'theft, robbery or pilferage,' the act of a swindler who deprived the insured of an automobile by means of a preconceived plan which involved impersonation, misrepresentation and fraud was a species of theft for which the insurance company was liable . . . ." (Syl.)

and on later cases to the same effect.

Appellants assert the other question is whether appellee waived the terms of the policy which required sworn proof of loss within sixty days. Those undoubtedly were the two principal questions involved in the trial and the court ruled thereon.

Assuming, without deciding, the cases relied on by appellants are determinative of insurance liability in a case of loss occasioned entirely by misrepresentations and fraud for the reason they constitute a species of theft, larceny, robbery or pilferage, we find other elements involved here among which is appellants' participation in an unlawful act by the acceptance of a check for the car with knowledge the maker did not have the funds in the bank at the time the check was delivered. There is also the further question whether appellants abandoned the car in Massachusetts and, if so, what the legal effect of abandonment was upon their right of recovery on the policy. Some other legal questions intrude.

However, further assuming appellee's liability under all these circumstances insofar as the policy coverage is concerned, appellants nevertheless are confronted with the duty to make proof of loss as a condition precedent to recovery. We, therefore, shall direct our initial attention to that question.

It is conceded the required proof of loss was not made. Appellants argue such proof was waived by appellee and it is estopped to claim otherwise. The correctness of that contention depends upon the facts by which this court is bound on appellate review and not on whether there is evidence to support appellants' contention.

In order to establish the waiver of a legal right there must be a clear, unequivocal and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part. (*Green v. Insurance Co.,* 106 Kan. 90, 92-93, 186 Pac. 970; *Cure v. Insurance Co.,* 109 Kan. 259, 261-262, 198 Pac. 940; *Leach v. Metropolitan Life Ins. Co.,* 124 Kan. 584, 589, 261 Pac. 603; *Musgrave v. Equitable Life Assurance Society,* 124 Kan. 804, 808, 262 Pac. 571; *Brown v. Metropolitan Life Ins. Co.,* 166 Kan. 616, 623, 203 P. 2d 150.)

It is the trier of the facts, in this case the court since a jury was

waived, who was required to be convinced appellee waived proof of loss. Proof of loss is a condition precedent to recovery under the terms of the policy. The burden of proving waiver of proof of loss was on appellants, the parties asserting it. (*Brown v. Metropolitan Life Ins. Co.*, supra, p. 622; *Brown v. Great American Ins. Co.*, 170 Kan. 281, 224 P. 2d 989.)

Upon the entire record consisting of oral and written testimony the court concluded appellants did not establish waiver of proof of loss and that appellee was not estopped to deny liability by reason of failure to make the required proof. There was ample testimony from which the court properly could conclude appellants did not claim and did not believe appellee was liable under the policy and so advised appellee's local agent. In fact there was no contrary evidence. Thereafter the local agent notified appellee of appellants' position and that appellants desired only to obtain appellee's assistance in locating the party who had obtained possession of the car. As previously stated, no proof of loss had been filed and no liability of appellee had been claimed by appellants. In view of those circumstances the main office of appellee advised its local agent that it could not obtain the assistance of the National Bureau, an investigating agency, to assist in apprehending the culprit.

That information was conveyed to appellants by the local agent. It was not until many months after the loss that appellee learned for the first time appellants believed the loss was covered by the policy. It was then that the company first denied liability. We have not overlooked giving careful attention to testimony cited by appellants. The trial court did not interpret such testimony as appellants do or did not place great weight thereon or it may have disbelieved it entirely. A court, as a jury, may disbelieve testimony which it deems unworthy of belief although there is no contrary testimony. (*Kallail v. Solomon*, 146 Kan. 599, 72 P. 2d 966; *Duran v. Mission Mortuary*, 174 Kan. 565, 258 P. 2d 241.) Conflict on material portions of the testimony was resolved against appellants. That was the court's privilege. There was substantial testimony from which the court could, and did, find appellee did not intend to, and did not, deny liability until long after the time for making proof of loss had expired and that it did not otherwise waive proof of loss. The findings made by the court, in preference to those requested by appellants, support the conclusions of law. Under these circumstances the judgment must be affirmed. It is so ordered.