(625 P.2d 505)

No. 51,942

WANDA L. ATKINSON, *Appellee,* v. ORKIN EXTERMINATING COMPANY, INC., *Appellant.*

Petition for review granted April 29, 1981.

Opinion filed March 6, 1981.

*Christopher B. Bacon,* of Lowe, Terry & Roberts, of Olathe, for appellant.

*Timothy V. Pickell,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, for appellee.

Before MEYER, P.J., ABBOTT and SWINEHART, JJ.

MEYER, J.: This is an action for breach of contract and negligence.

In December of 1975, the parties entered into an agreement whereby Orkin Exterminating Company, Inc. (Orkin), was to treat the Atkinsons' home for termites. They wanted their home treated after learning that a neighbor's home was infested. In conjunction with the contract, the Atkinsons purchased a renewable one-year guarantee which obligated Orkin to reinspect, retreat (if necessary), and repair any damage caused by termites from the date of the contract.

During the course of the lawsuit the husband, Allen Atkinson, died. His wife, Wanda L. Atkinson, both personally and as administratrix of her husband's estate, was substituted as plaintiff. As such she is appellee herein.

Orkin treated the home on December 12, 1975, and told the Atkinsons' son that there were no termites in their home and that there was no termite damage to it. This was confirmed by a diagram prepared by Orkin after the initial inspection.

In February of 1976, Mr. Atkinson called the local office and

requested reinspection. Again in the spring of 1976, after noticing a swarm of what Mr. Atkinson feared were termites, Orkin was called, but the company failed to reinspect after either call. In June of 1976, while Mr. Atkinson was sitting in a chair, the chair punched through the floor board. Orkin was notified of the event and told to come out right away, but the company took no action. *In the spring of 1977, Mr. Atkinson called the national office in Atlanta, Georgia, to request reinspection.* Mr. Atkinson also quit paying on the contract. On August 10, 1977, an inspector from another company inspected the home at the request of Mr. Atkinson. He testified that he found termite tunnels and damage under the crawl space. In September, 1977, a district manager of Orkin arrived and was unable to inspect due to water in the crawl space. *He gave appellee a handwritten statement promising to retreat needed areas as soon as conditions permitted.*

In October of 1977, a local manager of Orkin inspected the Atkinson home and removed termite tunnels from underneath the crawl space. He found termite damage to the crawl space and to the subflooring. He did not send a report to appellee, but did report the damage to the Atlanta Orkin office.

In November of 1977, Atkinson brought this action alleging breach of contract, violation of the Kansas Consumer Protection Act, and negligent treatment. At trial, evidence was submitted that wooden debris had been left underneath the crawl space and that insufficient levels of chemicals used to kill termites were found in some of the soil samples taken. No drill holes were made into the concrete block foundation to pour chemicals therein. There was conflicting evidence as to the need for such action. The evidence also showed that failure to remove wooden debris in the crawl space and failure to drill the concrete block foundation to insert chemicals constituted misdemeanor violations of the Pest Control Act.

Orkin moved for a directed verdict as to all claims of appellee. The trial court sustained the motion for directed verdict as to appellee's claim of deceptive acts in violation of the Kansas Consumer Protection Act, but allowed the other claims to go to the jury. The jury awarded $4,803.52 actual damages and $180,000.00 punitive damages. Orkin brings this appeal.

Orkin claims the trial court erred in overruling its motion for

directed verdict regarding the breach of contract issue for failure to comply with the notice provision of the contract.

Paragraph 3 of the General Terms and Conditions of the contract states:

"Any claim for breach of any Guarantee shall be made forthwith in writing to said ORKIN EXTERMINATING COMPANY, INC., 2170 Piedmont Road, N.E., Atlanta, Georgia 30324. No suit shall lie hereunder unless the provisions of Paragraph 4 have been complied with and unless brought within one (1) year after the making of said written demand."

Paragraph 4 deals with the requirement that the customer allow Orkin access to the premises for purposes of reinspection. Appellee admits that no claim in writing was ever sent to the Atlanta, Georgia, office, although the office was telephoned. An area district manager did respond to the call however, and came out to the home. At that time, he gave appellee a written statement: "We will retreat all needed areas and all areas that are presently infested. This will be done when conditions permit." Orkin argues that as to the claims that Orkin breached its contract by failing to reinspect, failing to retreat, and failing to repair, that recovery was barred by the appellee's failure to send written notice to the central company.

Appellee argues that the provision in the contract which required written notice before suit (1) was unconscionable, (2) was waived by Orkin, and (3) was not a condition precedent to suit. The trial court did not specifically rule whether that particular paragraph was unconscionable. The trial court let the contract issues go to the jury. The trial court did, however, rule that the contract as a whole was not unconscionable and sustained Orkin's motion for directed verdict as to count three, which included an assertion that Orkin had engaged in unconscionable acts in respect to the consumer transaction by entering into a contract which was excessively one-sided in favor of Orkin. The major gist of that count was trying to establish liability under the Kansas Consumer Protection Act. The court did not agree with such a characterization.

The doctrine of unconscionability has been applied in Kansas under the common law. See *Steele v. J. I. Case Co.,* 197 Kan. 554, 419 P.2d 902 (1966). In the recent case of *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. 755, 757-8, 549 P.2d 903 (1976), the doctrine of unconscionability was discussed at length. It was therein stated:

"Although the UCC's application is primarily limited to contracts for the present or future sale of goods (K.S.A. 84-2-102; 84-2-105), many courts have extended the statute by analogy into other areas of the law or have used the doctrine as an alternative basis for their holdings [citation omitted]."

The UCC unconscionability clause, as well as the common law doctrine, could be held to be applicable herein, even though the sale did not involve goods.

The Uniform Commercial Code, K.S.A. 84-2-302, states in part:

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

Further, in *Wille v. Southwestern Bell*, 219 Kan. at 759-60, it was stated:

" '[M]ere disparity of bargaining strength, *without more,* is not enough to make out a case of unconscionability. . . .' [Ellinghaus, *In Defense of Unconscionability,* 78 Yale L.J. 757, 766-67.]

"[T]he doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain [citation omitted]."

This court could not find any cases where this type of notice provision has been held unconscionable. The circumstances were not such as to render this contract unconscionable as there was a conspicuous notation on the front of the contract calling attention to the general provision on the back. The Atkinsons were not of below-average intelligence, nor were they taken advantage of. We note that many insurance contracts contain notice and proof of loss provisions as conditions precedent to bringing suit. Failure to comply with a notice and proof of loss provision in a group insurance policy was held to preclude recovery in *Brown v. Metropolitan Life Ins. Co.,* 166 Kan. 616, 203 P.2d 150 (1949).

Even though the contract is held not to be unconscionable, there still is the question of whether there was substantial compliance with the provision. We note that 44 Am. Jur. 2d, Insurance § 1481, p. 349, indicates that when notice or proof of loss is required to be in writing, an oral notice will not satisfy that requirement. However, the requirement of written notice may be waived or may be lost by estoppel.

Some early Kansas cases indicate that notice provisions requiring notice of breaches of warranty may be waived. In *Machine Co. v. Mann,* 42 Kan. 372, Syl. ¶ 2, 22 Pac. 417 (1889), it was stated:

"Where it is also provided in the conditional warranty of the sale of the harvester, that if after trial it failed to do good work, the purchaser must give immediate notice in writing at the office of the company at Springfield, Ohio, subject to a second trial in its presence, and no such notice is given, but the manager of the company's western office at St. Joseph, Missouri, did personally direct and supervise the operation of the machine after it failed to do good work, this would be sufficient notice to the company that it did not comply with the warranty."

In *Advance-Rumley Co. v. Stoops,* 125 Kan. 16, 262 Pac. 604 (1928), it was held that failure to comply with the notice requirements of the contract was not waived by attempts to remedy the defect. It is noted that in that case there was a proviso in the contract which stated that no attempt by vendor or its representatives to remedy defects shall constitute a waiver of any of the provisions thereof.

In *Oliver Farm Equipment Sales Co. v. Patch,* 134 Kan. 314, 5 P.2d 795 (1931), it was held that defendant's failure to notify the company of a defect in the machine by registered letter addressed to Battle Creek, Michigan, was waived when it received and acted upon oral notice to its local agent and on written notice in an unregistered letter to its district headquarters at Kansas City.

In the instant case we conclude that the requirement of written notice to the central office of the company was effectively waived when the district manager visited appellee's home and gave her a written statement promising to retreat needed areas.

Orkin contends there was insufficient evidence to submit the issue of punitive damages to the jury.

"In actions based upon a breach of contract the damages recoverable are those which might reasonably have been anticipated by the parties and are limited to pecuniary loss which naturally occurs as a proximate result of the breach. [Citations omitted.]

"It is a well accepted general rule that an unjustified breach of à contract does not entitle a party to punitive damages. [Citations omitted.]

"An exception to this general rule is recognized when some independent tort or wrong results in additional injury which justifies the assessment of punitive damages by way of punishment of the wrongdoer. In such a case the proof of the independent tort must indicate the presence of malice, fraud or wanton disregard for the rights of others." *Hess v. Jarboe,* 201 Kan. 705, 708-9, 443 P.2d 294 (1968).

See also *Temmen v. Kent-Brown Chev. Co.,* 227 Kan. 45, 605 P.2d 95 (1980); *Modern Air Conditioning, Inc. v. Cinderella Homes; Inc.,* 226 Kan. 70, 596 P.2d 816 (1979); *Kiser v. Gilmore,* 2 Kan. App. 2d 683, 587 P.2d 911, *rev. denied* 225 Kan. 844 (1979); *Dold v. Sherow,* 220 Kan. 350, 552 P.2d 945 (1976); and *Service Oil Co. v. White,* 218 Kan. 87, 542 P.2d 652 (1975).

The independent tort alleged in the present case is the negligent application of the chemicals used to kill the termites and the failure to remove wooden debris from underneath the crawl space to the house.

The difference between a tort and contract action was extensively discussed in *Malone v. University of Kansas Medical Center,* 220 Kan. 371, 374, 552 P.2d 885 (1976).

"A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course, be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties."

. . . .

" 'Where a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of the duty is a tort. . . .' " 220 Kan. at 375, citing from 52 Am. Jur., Torts, § 26, p. 379.

In *Malone,* it was held that the failure to provide necessary, complete, competent and authorized treatment for a patient was a cause of action sounding in tort.

In the case at bar, there was evidence of the standard of care imposed by law (under the Pest Control Act) and the breach of that duty. The cause of action for negligent treatment of the premises was thus established by substantial competent evidence. There was clearly an independent tort.

The tort of negligence must also indicate the presence of wanton disregard for the rights of others in order to support a recovery of punitive damages.

" '[I]n all actions to recover damages for negligence, where actual damages are recoverable, the plaintiff is entitled to recover exemplary damages if the negligence be so gross as to amount to wantonness (citing cases). The term "wantonness" as here used does not necessarily mean malice, but a reckless disregard of the rights of others.' " *Allman v. Bird,* 186 Kan. 802, 805, 353 P.2d 216 (1960), citing from *Telegraph Co. v. Lawson,* 66 Kan. 660, 662-3, 72 Pac. 283 (1903).

. . . .

" 'To constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent injury because indifferent to whether it occurred or not. If the actor has reason to believe his act may injure another, and does it being indifferent to whether it does or not, he is guilty of wanton conduct.' (Syl. ¶ 5)" *Allman v. Bird*, 186 Kan. at 806, citing from *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 157 P.2d 822 (1945).

There was evidence from which the jury could conclude the negligence in treatment was wanton. The house next to appellees was infested and the company was so informed. Further, the wood left under the house was in violation of the Pest Control Act and would support an inference that this was a gross neglect of duty in reckless indifference as to whether the treatment would prevent termite infestation.

It should be noted that the repeated failure to retreat, reinspect or repair damages were mere contractual duties and there was no duty imposed by law to do so. This, then, could not provide evidence which would support an award of punitive damages.

We conclude there was sufficient evidence to submit the issue of punitive damages to the jury.

Orkin contends it was error to use PIK Instruction 9.44 when alternative theories of recovery are alleged, one for breach of contract and one for negligence, as such instruction did not require a finding by the jury of an independent tort but allowed the jury to award punitive damages for willful or wanton breach of contract.

Because of the extreme importance of this issue, and our conclusion that the answer to it is dispositive of this case, we hereinafter set out, in full, those instructions which are pertinent to this issue together with the verdict form. These documents are as follows, to-wit:

### INSTRUCTION NO. 13

"The plaintiffs claim that they sustained damages due to the breach of a contract by defendant Orkin Exterminating Company, Inc. in one or more of the following respects:

"1. Failing to properly treat the home for extermination of termites;
"2. Failing to provide promised reinspection of their home after an initial termite treatment;
"3. Failing to provide retreatment for prevention of termites after the initial termite treatment;

"4.  Failing to provide repairs to those areas of the home damaged by termite infestation.

"The plaintiffs have the burden to prove that their claims are more probably true than not true.

"The defendant admits that:

"1.  They entered into a contract with Allen R. Atkinson on December 9, 1975;

"2.  Defendant admits that a written guarantee was furnished to Allen R. Atkinson on December 12, 1975.

"The defendant denies:

"1.  That it breached the contract with plaintiff;

"2.  That plaintiffs' home has been damaged by defendant;

"3.  As an affirmative defense, defendant contends plaintiff breached the contract. The burden of proof is upon the defendant to prove its affirmative defense.

"If you find from all of the evidence that the plaintiff has met the burden of proof on one or more of her claims concerning which the burden of proof rests upon her, then you should return a verdict in favor of the plaintiff.

"If, on the other hand, you find that the plaintiff has failed to meet the burden of proof on one or more of her claims, or that the defendant has met the burden of proof on its affirmative defense, then you should return a verdict in favor of the defendant."

## INSTRUCTION NO. 13A

"In the alternative, the plaintiff claims that she suffered damage due to the negligence of defendant Orkin Exterminating Company, Inc. in one or more of the following respects:

"1.  Failing to remove wooden debris or materials from beneath their home at the time of the initial termite treatment;

"2.  Failing to properly drill, spray and treat the home with preventative chemicals.

"The plaintiff has the burden to prove that her claims are more probably true than not true.

"The defendant denies:

"1.  That it was negligent in the original treatment of the Atkinson home;

"2.  That plaintiffs' home has been damaged by defendant.

"If you find from all the evidence that the plaintiff has met the burden of proof on one or more of her claims concerning which the burden of proof rests upon her, then you should return a verdict in favor of the plaintiff.

"If, on the other hand, you find that the plaintiff has failed to meet the burden of proof on one or more of her claims concerning which the burden of proof rests upon her, then you should return a verdict in favor of the defendant."

## INSTRUCTION NO. 16

"Negligence is the lack of ordinary care. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all the circumstances then existing. The negligence claimed by plaintiff must be the cause of the damages sustained."

## INSTRUCTION NO. 16A

"As standards of ordinary care certain duties are imposed by law. It is for you to decide from the evidence whether any statutes which apply in this case have been violated. The violation of a duty is negligence."

## INSTRUCTION NO. 18

"If you find that the plaintiff is entitled to recover and you also find that the conduct of the defendant was wilful or wanton, then in addition to the actual damages to which you find plaintiff entitled, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter others from like conduct.

"If you allow punitive damages, you may take into consideration the following items:

"1. The probable and reasonable expenses of litigation including attorney fees, expert witness fees, and the inconvenience and time involved in preparing for trial;

"2. An amount as shall be an example to others and deter them from such conduct;

"3. In determining punitive damages, you may consider the consolidated assets of defendant as $50,000,000.00.

"The amount should not be so small as to be trifling nor so large as to be unjust, but such as candid and dispassionate minds can approve as a punitive example and as a warning to others against a similar lapse of duty.

"The amount to be awarded, if any, rests within your sound discretion."

## INSTRUCTION NO. 19

"A wanton act is one indicating a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the act."

## INSTRUCTION NO. 20

"A wilful act is one indicating a design, purpose or intent on the part of a person to do wrong or to cause an injury to another."

## VERDICT

"We, the jury, sworn upon our oath, return the following answers to questions submitted by the Court:

"1. Do you find plaintiff breached the termite contract with defendant?
Yes_____ No _X_

"2. Do you find defendant breached the termite contract with plaintiff?
Yes_X_ No_____

"3. If you determine both parties breached the contract, which party breached the contract first?

Answer_____

"4. Do you find that the conduct of the defendant was wilful or wanton?
Yes_X_ No_____

"5. What total amount of actual damages do you find was sustained by plaintiff, if any?

$4,803.52

"6. What total amount of punitive damages do you find should be awarded plaintiff, if any?

$180,000.00

Charlotte Gist, Foreman"

Orkin made clear its objection to the failure of the instructions to require the jury to find that an independent tort was committed. Orkin proposed an instruction that the jury must find an independent tort in order to award punitive damages and also proposed that the word "negligent" be inserted before the word "conduct" in the second line of Instruction No. 18. The trial court rejected these proposals.

The jury was instructed on alternative theories of recovery in Instruction Nos. 13 and 13A. The theory of recovery set out in 13A was for negligence based on the failure to remove wooden debris from beneath the house and failure to properly drill, spray and treat the home with preventative chemicals. The other theory set out in 13 was for breach of contract and was based on the failure to properly treat the home, failure to reinspect, retreat and provide repairs.

The troublesome feature of these instructions is simply this: Even though the jury, in its verdict form, found that the conduct of Orkin was willful or wanton, it is impossible for us to know whether the jury was referring to instruction No. 13 or 13A. If the jury felt that the willful or wanton conduct was that expressed in 13, then the willful or wanton conduct would relate to the breach of contract only, and not to an independent tort. On the other hand, if its finding of willful or wanton conduct related to appellee's alternative claim, as shown as items 1 and 2 of instruction No. 13A, then its finding would be of willful or wanton conduct constituting an independent tort. There is nothing particularly "tort-oriented" about the language "willful or wanton conduct." These terms could be applied to a flagrant breach of contract as well as they could be applied to a tort. Indeed, it seems highly plausible that the jury granted the large amount of punitive damages herein based primarily, or even solely, upon Orkin's failure to provide reinspection, retreatment and repairs after notice. If so, the jury would have found willful or wanton conduct by way of a breach of the contract, but would not have

found an independent tort. This would be error. While we note other jurisdictions have somewhat abrogated the rule, our Supreme Court has repeatedly held in the cases cited above that punitive damages will not lie for breach of contract absent an independent tort connected therewith. See Note, *Punitive Damages in Contract Actions—Are the Exceptions Swallowing the Rule?*, 20 Washburn L.J. 86 (1980).

In the instant case, there was clear and convincing evidence from which the jury could have found willful or wanton conduct, which conduct did, in fact, constitute an independent tort. The trouble is we are likewise convinced that the instructions given in the instant case allowed the jury to award punitive damages even if it found no negligence, but found a willful or wanton breach of contract. For this reason and because of the cases above cited, we cannot affirm the judgment of punitive damages.

We are aware that none of the above cases is directly in point. None of the cases involved a situation where there was evidence of both an independent tort and breach of contract, but the instruction was challenged because it failed to correctly instruct the jury. For example, in *Temmen v. Kent-Brown Chev. Co.*, 227 Kan. 45, there was no evidence of an independent tort; in *Dold v. Sherow*, 220 Kan. 350, the defendant did not object to the substance of the instruction; in *Service Oil Co. v. White*, 218 Kan. 87, no issue as to the propriety of the instructions was raised; and in *Hess v. Jarboe*, 201 Kan. 705, no independent tortious act was alleged and none appeared in the evidence. Nonetheless, such cases stand for the proposition that exemplary or punitive damages are not recoverable in the absence of an independent tort. We hold, therefore, that the giving of the above instructions constituted reversible error.

Orkin's next claim of error is that the verdict form was not proper in that it did not require a finding of an independent tort.

It is noted that the questions asked in the verdict form did not inquire of the jury whether it found a tort at all. The questions submitted mentioned only the breach of contract and willful or wanton conduct. Orkin requested an additional question as to whether the jury found willful or wanton negligence, but this proposed question was rejected by the trial court. Much of what has been said as to the previous issue—concerning the instructions—can be said about this issue. While, under K.S.A. 60-

249(*b*), the trial court may submit written interrogatories upon one or more substantial questions of disputed fact, the decision as to whether to submit such questions to the jury is discretionary. See *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 101, 468 P.2d 269 (1970). Nevertheless, had the requested question been given by the trial court, it may well have cured the error referred to above in our criticism of the instructions.

Orkin also claims it was error to admit into evidence a statement given to appellee that Orkin would retreat needed areas as conditions permit, as such statement was inadmissible as an offer of settlement.

K.S.A. 60-452 states:

"Evidence that a person has, in compromise or from humanitarian motives furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claims to have sustained loss or damage, is inadmissible to prove his or her liability for the loss or damage of any part of it. This section shall not affect the admissibility of evidence (*a*) of partial satisfaction of an asserted claim on demand without questioning its validity, as tending to prove the validity of the claim, or (*b*) of a debtor's payment or promise to pay all or a part of his or her pre-existing debt as tending to prove the creation of a new duty on his or her part, or a revival of his or her pre-existing duty."

Appellee argues that the statement is not an offer of settlement. No lawsuit was yet on file and appellee had not made a claim at that time.

The statement was: "We will retreat all needed areas and all areas that are presently infested. This will be done when conditions permit." Since there was no claim of loss or damage at that time, the requests were merely asking for the company to come out and retreat. The statement was given in order to reassure the appellee that Orkin would come back later since at that time there was too much water under the crawl space to retreat. It was not an offer to settle or compromise a claim.

Even if it could be construed to be an offer of settlement, the statement was admissible as relevant to prove waiver of the notice provision, even though not admissible to show liability on the part of Orkin.

Orkin contends the punitive damages award was excessive. The jury awarded actual damages of $4,803.52 and $180,000.00 punitive damages. Evidence was before the jury that the consolidated assets of Orkin were $50,000,000.00. Because of our holding herein, it is not necessary that we address this issue.

Finally, appellee argues that Orkin is precluded from appellate review of trial errors because it appealed only from the jury verdict and not from the trial court order overruling the motion for a new trial.

Prior to January 1, 1964, appellants were required to file a motion for a new trial and appeal from denial of said motion in order to obtain appellate review of trial error.

Effective January 1, 1964, the Code of Civil Procedure was amended to adopt a more liberal policy of procedure. K.S.A. 60-202. With the passage of the new rules of civil procedure in 1963, the Kansas Supreme Court passed Rule No. 6(d) (211 Kan. xxvii) which provided in part: "An issue may be raised in the statement of points regardless of whether a motion for a new trial was filed . . . ."

As a result, it was no longer necessary to appeal from the order overruling a new trial in order to secure a review of trial errors in civil cases. *Schoof v. Byrd,* 197 Kan. 38, 47, 415 P.2d 384 (1966). This rule was later extended to criminal procedure. *State v. Ayres,* 203 Kan. 376, 454 P.2d 534 (1969).

Effective January 10, 1977, the Supreme Court adopted new rules which repealed the former Supreme Court rules 1-18, including Rule 6(d). See Rule 1.01(b), 225 Kan. xxxi.

We conclude that the pre-1964 requirement was not reinstated by repeal of the former Supreme Court rules and that a party may obtain a review of trial errors by appealing the judgment even if it did not appeal from a motion for a new trial.

The judgment of the trial court of $4,803.52 in compensatory damages is affirmed. The judgment granting $180,000.00 in punitive damages is reversed and remanded to the trial court for a new trial to determine punitive damages under such instructions as will require the jury to find an independent tort in order to award punitive damages. An instruction to the effect that punitive damages may be awarded if the jury finds defendant was negligent could be added as a supplement to instruction No. 13A.

Another instruction to the effect that willful or wanton conduct in the breach of a contract does not give rise to punitive damages could be added as a supplement to instruction No. 13. The verdict form should inquire as to whether the jury found that defendant was guilty of willful or wanton conduct in the commission of a tort.

Affirmed in part, reversed in part, and remanded with instructions.