No. 41,919

JEROLD W. FOLEY and COMMERCE ACCEPTANCE OF ATCHISON, INC., a Corporation, *Appellees*, v. UNITED SERVICES AUTOMOBILE ASSOCIATION, *Appellant*.

(357 P. 2d 824)

Opinion filed December 10, 1960.

*Harold E. Doherty*, of Topeka, argued the cause, and *James E. Benfer*, of Topeka, was with him on the briefs for the appellant.

*J. W. Lowry*, of Atchison, argued the cause, and *Steadman Ball*, *William E. Stillings* and *Robert D. Caplinger*, of Atchison, were with him on the briefs for the appellees.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover the cash value of a Chevrolet automobile and storage charges under an insurance policy issued by the defendant to appellee Jerold W. Foley insuring the car against flood damage under comprehensive features of the policy, and for attorneys' fees under G. S. 1949, 40-2004 and G. S. 1959 Supp., 40-256. Appellee Commerce Acceptance of Atchison, Inc., was named as payee under a loss-payable endorsement.

Trial was by a jury which answered special questions and returned its general verdict in favor of the plaintiffs in the sum of $1400. The defendant appeals from the district court's orders overruling its demurrer to the plaintiffs' evidence; its motion for a directed verdict in favor of the defendant; to set aside answers to special questions; for a new trial, and from the judgment entered in favor of the plaintiffs upon the jury's verdict.

The pleadings of the parties will not be referred to except to say the plaintiffs alleged that the actual cash value of the car on July 11, 1958, was $1745, and that the sum of $184.50 was incurred for

storage of the car between July 11, 1958, and January 5, 1959. The insurance policy issued to Foley was attached to and made a part of the petition. One of its provisions required the insured in the event of loss to protect the car, and reasonable expenses incurred in affording protection were deemed to be incurred at the defendant's request. The comprehensive clause of the policy provided against loss "caused other than by collision to the owned automobile" and that "for the purpose of this coverage . . . water, flood . . . shall not be deemed to be loss caused by collision." The comprehensive clause further provided that the defendant's liability for loss "shall not exceed the actual cash value of the property, or if the loss is of a part thereof, the actual cash value of such part, at time of loss, nor (shall it exceed) what it would then cost to repair or replace the property or such part thereof with other of a like kind and quality. . . ." Condition 11 of the policy related to payment of loss, and provided in substance that the defendant have the alternative of paying for the loss in money, or repair, or replace the damaged property.

The loss occurred on July 11, 1958, while Foley's car was in the Miller Chevrolet Garage in Atchison for the repair of a broken piston. On that date a flash flood occurred and muddy flood water reached a height of eighteen inches on the automobile, submerging all of the mechanical parts of the underside and reached a height of one to two inches inside the car. The defendant does not contend the loss was not an insured event; the dispute arises over the amount of damage.

Foley resided in Atchison, but when the loss was incurred he was in the military service and stationed in Florida. The defendant did not contact Foley's representative to adjust the loss until August 25, 1958, at which time it offered to pay Foley $50.93 based upon an estimate by the Miller Chevrolet Garage totaling $128.20 which was the cost of parts the defendant determined it would allow. In October 1958 two subsequent independent appraisals of the loss were made, one for $114.25 and one for $299.50, with a resulting offer of settlement by the defendant in the amount of $250. On the back of those appraisals the defendant's agent endorsed, "No agreed price secured as per your instructions," and further, "appraisal for your information only." At this juncture we note the jury found that, in answer to a special question, the car was prevented from being repaired because of failure of the parties to

reach a settlement. Obviously, the finding was amply supported by the evidence.

On November 28, 1958, Foley's representative for the first time procured an estimate of cost to restore the car to its previous condition, which was $795.83. Foley testified he was willing to settle for that amount, but the defendant refused. Thereafter Foley made proof of loss upon forms furnished by the defendant for the full value of the car in the amount of $1745. After this action was commenced, and on January 5, 1959, Foley sold the car to a salvage dealer for $475.

While the defendant makes six specifications of error, it briefs and argues only the following questions for appellate review: (1) whether there was substantial evidence to support the jury's finding that the car was a total loss and could not be repaired satisfactorily; (2) whether the district court erred in the admission of evidence, and (3) whether the insured complied with the terms of the policy in making proof of loss.

Concerning the defendant's first point we deem it unnecessary to detail the testimony of each witness, nor would it add to this opinion. Much conflicting testimony was introduced, and, conceding that there was testimony that the car could have been repaired, the same witnesses also testified that flooded cars were damaged above and beyond the cost of repair. There was testimony by reputable dealers that in making repairs to a flooded car a dealer would not guarantee the work done because of a possibility of overlooking portions that might have been damaged; that flooded cars were salvaged because a dealer did not want to make an enemy of a customer; that flood odor was very hard to get rid of, and that "We always think it might give trouble later on. . . . You could probably repair it but it would be prohibitive to go that far, so you just salvage it and your troubles are over." The jury was entitled to draw the inference from all the testimony that while the car might have been repaired within a reasonable time after the flood, such repair would not have been 100 percent successful after the car was permitted to sit in the garage for almost six months rusting and deteriorating in value as a result of failure of the parties to reach a settlement. The evidence was that at no time did the defendant make an offer of settlement under the terms of the policy comparable to the estimates of repair then under discussion.

No claim is made that the district court erred in its instructions to the jury, and we assume it was properly instructed with respect to the measure of Foley's damage, in the event it found for the plaintiffs, and the quantum of proof necessary to sustain this type of action. The essential question was: Could the car be repaired satisfactorily, or was it a total loss? In answer to a special question the jury found the car was a total loss, and we think there was substantial evidence to support that finding.

Evidence was introduced showing the car to be worth $1745, $1800, and $1850. As previously indicated, the car was in the Miller Chevrolet Garage to have a broken piston repaired and there was evidence that such repair would cost in the neighborhood of $50. Based upon the following calculation we think the evidence warranted a verdict for the plaintiffs in the amount of $1400 under the terms of the policy: taking $1745 as the value of the car and adding $184.50 as storage charges to protect the car, and subtracting therefrom $50 for repair of the piston and $475 for salvage, a loss of $1404.50 was established. Clearly, the evidence supported the jury's verdict for the plaintiffs.

The defendant next contends the district court erred in permitting a witness for the plaintiffs to testify as to the value of Foley's car. Frank Smith, the discount manager of Commerce Acceptance of Atchison, Inc., testified that his company had a mortgage on Foley's car in the amount of $2184.62 on the date of the flood. He stated that in his opinion the value of the car on that date was $1800. Before he made that statement the defendant objected to the witness' reference to a "red book" identified by the witness as the National Market Reports, Official Used Car Appraisals. In overruling the objection, the district court stated it took judicial notice that the book was commonly and ordinarily used in the trade to appraise the value of used cars and appliances, and permitted the witness to answer the question. Furthermore, so far as the record discloses, the witness never found the object of his search, nor did he rely upon values set out in the book in expressing his opinion as to the value of Foley's car. The most that can be said is that the witness had such a book in his possession. Moreover, it is a well-accepted fact that there are a number of publications similar to the one referred to by the witness which are used by automobile dealers, banks, finance companies and others to ascertain the constantly changing values of the dozens of models and various age

cars that are bought and sold daily. As previously demonstrated, it is apparent that, in arriving at its verdict, the jury used the lesser figure of $1745 as the value of the car. It is evident the defendant was not prejudiced by the admission of the testimony.

The defendant lastly contends that Foley's proof of loss was improperly admitted in evidence because the notary public did not witness his execution of the instrument, and relies upon *Lyon v. Kansas City Fire & Marine Ins. Co.*, 176 Kan. 411, 271 P. 2d 291. Neither the insurance policy nor the proof of loss was abstracted to enable this court to properly consider the point, but, assuming, *arguendo*, that the proof of loss was not properly witnessed, we are unable to see how that prejudiced the defendant in handling the plaintiffs' claim, or in defending this action. The proof of loss was not made until December 20, 1958, and by that time the defendant had investigated, made at least three estimates of loss, and had made meager proposals of settlement to the plaintiffs. Foley testified under oath regarding the matters set out in the written proof of loss, and we think the defendant was not prejudiced in any manner by its admission in evidence. In *Lyon v. Kansas City Fire & Marine Ins. Co.*, supra, the policy was before the court and required a sworn proof of loss—no proof of loss of any kind had been made. In the instant case both the policy and the proof of loss were pleaded and admitted in evidence and the court instructed the jury concerning them, but, again, those instructions were not abstracted. When instructions of the district court are omitted from the record the supreme court will presume that the proper instructions were given.

The defendant having failed to make it affirmatively appear that error was committed in the court below, we are compelled to affirm the judgment.

It is so ordered.